GEORGE SANG v. CITY OF ST. LOUIS, Appellant.

Division One, December 2, 1914.

1. **TESTIMONY: Credibility: Theory of Expert: Contradicted by Laymen.** The credit due the testimony of lay witnesses directed to establishing a fact, as against the advisory theorizing of experts, is always for the jury, not the court. It cannot be *held* that one of plaintiff's testicles was not driven by the accident up into his abdomen and remained there, simply because the doctors testified they never saw or read of an accident of the kind, and that the size of the usual canal, protected, as it is, by muscular rings, excludes the idea that the testicle could be driven by force from nature's sack up and along this canal, where unimpeached lay witnesses, including plaintiff's mother, testified that he was normal in this particular before the accident occurred and abnormal ever afterwards. The testimony of the experts was merely advisory, and the issue of fact was for the jury.

2. **EVIDENCE: Future Medical Attention.** Future expenses for physicians rest upon the same ground as the probable loss of future earnings. Where the evidence shows that a' hernia and a complicated, compound, comminuted fracture of the leg between the knee and the ankle, resulted from the accident; the medical testimony is that the hernia, though reduced, is likely to recur at any time, and the trouble, when once the abdominal walls are ruptured and the intestines protrude, will with reasonable certainty recur from lifting or even ordinary labor; that the bones of the leg had been somewhat crushed and this crushing made the fracture a comminuted one; that some flesh and ligaments got between the. parts of the compound fracture, and this was not discovered at first and caused suppuration and failure to knit, and after the bones were wired together it was several months healing, and at the trial, one year after the accident, there was still pain in the leg and tenderness in the wounded parts, there was sufficient evidence upon which to base an instruction authorizing a recovery "for any expense for medical services which the jury find and believe from the evidence plaintiff is reasonably certain to necessarily incur in the future by reason of his injuries and directly caused thereby;" for it is apparent from the evidence, that medical attention in the future will be reasonably certain to guard the situation or to reduce the recurring hernia or prevent strangulation.

3. ———: **Best Evidence.** No case calls for better evidence than the case admits of. Certain elements of damage may go to the jury though there is no line of testimony by which the fact of damage may be established with absolute certainty.

4. **NOMINAL DAMAGES: Request for Limit to Must Be Made by Defendant.** If there is some substantial evidence that future medical services will be necessary, and defendant is of the opinion that it is not sufficient to support a finding of actual damages, it is its duty, if it wishes to limit plaintiff's recovery to nominal damages on that score, to ask an instruction to that effect.

5. **NEGLIGENCE: Damages: Modest Sum: Instruction: Elements Unsupported by Evidence.** Where the evidence establish serious and permanent injuries and the verdict is for a modest sum and is absorbed by referring it to damages plainly suffered and about which there can be no speculation, it would be trifling with justice to suppose the jury allowed anything of substance on the issue of future medical services; and though the instruction permits a finding for future medical services, the verdict will not be reversed on the ground that the evidence fixes no definite amount or character of services to be rendered.

6. **NEW TRIAL: Newly Discovered Evidence.** To obtain a new trial on the ground of newly discovered evidence the party asking for it must show: first, that the evidence has come to his knowledge since the trial; second, that it was not owing to the lack of due diligence that it did not come sooner; third, that it is so material that it would probably produce a different result if the new trial were granted; fourth, that it is not merely cumulative; and, fifth, that the object of the evidence is not merely to impeach the character or credit of a witness. If the facts show that twenty-four hours before the close of the testimony, appellant was informed of the means by which to ascertain the names and residence of the absent witnesses and made no effort to obtain their attendance until after an adverse verdict was rendered, there was no diligence, and a new trial cannot be granted because of their absence.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen*, Judge.

AFFIRMED.

*William E. Baird* and *Truman P. Young* for appellant.

(1) The instruction allowing for the expense of future medical services was erroneous, for, (a) There was no evidence to support it. Duke v. Railroad, 99 Mo. 347; Slaughter v. Railroad, 116 Mo. 269; Gibler v. Terminal Assn., 203 Mo. 208. (b) Damages will not be awarded to compensate for losses not yet experienced on mere conjectural possibilities. Sutherland, "Damages," p. 3644; Joyce, "Damages," sec. 260; Voorhies, "The Measure of Damages in Personal Injuries," pp. 70, 73; Thompson, "Negligence," secs. 7205, 7333; Strohm v. Railroad, 96 N. Y. 305; Ross v. Kansas City, 48 Mo. App. 440; Wilbur v. Railroad, 110 Mo. App. 689. (c) Damages covering expenses for future medical services will not be awarded in the absence of evidence indicating the reasonable likelihood that such expense will be incurred. Minister v. Railroad, 53 Mo. App. 276; Page v. Canal Co., 34 App. Div. (N. Y.) 618; McKenna v. Railroad, 41 App. Div.

(N. Y.) 255. (2) The motion for a new trial on the ground of newly discovered evidence should have been sustained.

*Joseph A. Wright* and *Conrad Paeben* for respondent.

(1) The evidence fully justifies the instruction on damages as given. Sotebier v. Transit Co., 203 Mo. 702; Feeney v. Railroad, 116 N. Y. 375, 5 L. R. A. 544; Wolf v. Railroad, 67 App. Div. 613, 74 N. Y. Supp. 336; Turner v. Railroad, 158 Mass. 267; Moran v. Street Ry. Co., 74 N. H. 500, 19 L. R. A. (N. S.) 920; Parker v. Transit Co., 108 Mo. App. 465; Pentoney v. Transit Co., 108 Mo. App. 681; Lackland v. Mining Co., 110 Mo. App. 634; Mabrey v. Gravel Road Co., 92 Mo. App. 596. (2) Defendant asked no qualifying instruction on measure of damages, and therefore cannot now complain. King v. St. Louis, 250 Mo. 501; State ex rel. v. Reynolds, 257 Mo. 19; Browning v. Railroad, 124 Mo. 55; Nelson v. Railroad, 176 Mo. App. 423; Jennings v. Appleman, 159 Mo. App. 12; Mabrey v. Gravel Road Co., 92 Mo. App. 596. (3) The trial court properly refused appellant a new trial on the ground of newly discovered evidence, because of a failure of diligence, and the evidence, at most, would be merely cumulative. At most, the ruling is within the exercise of a sound discretion. State v. Nickems, 122 Mo. 607; State v. Welsor, 117 Mo. 570; Porter v. Stock Yards Co., 213 Mo. 372; Dent v. Traction Co., 145 Mo. App. 70.

LAMM, J.—Suing for personal injuries and laying his damages at $15,000, plaintiff had a verdict for $4000. In due time defendant unsuccessfully moved for a new trial and appealed.

In outline the case is this: Plaintiff, twenty-seven years old, married and earning $15 per week, at half-

past six p. m., October 3, 1910, during a great rain and while it was "pitch dark," was driving a one-horse beer wagon with a canopy top, on a paved street, Palm, in St. Louis, for the purpose of delivering a barrel and a keg of beer. Palm intersects Glasgow, then either a dirt road or partly clay and partly macadam. This intersection was not paved. In the street there was a hole, say, seven or eight feet long, two or three feet wide, and a foot or a foot and a half deep, at the time flooded with water, as were the two streets. Never having driven there before and knowing nothing of this hole, plaintiff at a sharp trot drove into it, whereby he was thrown over the footboard against the horse, and into the hole, both wheels of the wagon on his side running over his leg and the lower part of his abdomen. The existence and character of this hole in the street and in the line of travel for a length of time sufficient to give notice to the city are not questioned. In other words, the negligence of the city, disputed below, is no longer disputed on appeal. That the issue of negligence was properly submitted on the pleadings is not controverted. So, defendant's defense being contributory negligence, that issue was well submitted. So, the grave character of plaintiff's injuries is not disputed—the testimony showing a complicated, compound, comminuted fracture of the left leg between the knee and the ankle. It also showed a resulting hernia, a lump hard by the groin still existing at the trial. In addition thereto a singular thing happened on plaintiff's theory, to-wit, one of his testicles was driven by the accident up into his abdomen and remained there at the point of the hernia. The fact of the dislocated testicle is conceded. That it resulted from the accident is strenuously controverted by defendant. We shall revert further to the evidence in the body of the opinion.

Two questions, and only two, are to be ruled, to-wit:

(a)   In plaintiff's instruction on the measure of damages are three propositions.  The first allowed recovery for plaintiff's past pain of body and mind suffered and caused by his injuries and for such pain as the jury may find and believe he is reasonably certain to suffer in the future as a direct result.  The second allowed recovery of expense for medical services and medicines necessarily incurred by plaintiff and for which he became obligated by reason of his injuries and directly resulting therefrom.  (The testimony tended to show the rise of $400 on this item.)   Then follows this clause:  ''And for any expense for medical services which the jury find and believe from the evidence plaintiff is reasonably certain to necessarily incur in the future by reason of his injuries and directly caused thereby.''  The third allowed recovery for loss of earnings of his labor suffered by reason of his injuries or which he was reasonably certain to suffer therefrom in the future.

Appellant assigns error in giving that part of the instruction quoted above from the second proposition and such insistence is its first assignment.

(b)   A timely supplemental motion for a new trial counts on the theory of newly discovered evidence.  The second assignment of error is predicated of the overruling of such supplemental motion, the facts in judgment appearing in due course.

I.   *Of assignment a.*

There is no complaint made of the *form* in which the question of future medical services is put to the jury.   The complaint is narrowed to the contention there was no evidence on which to predicate such recovery and that is the sole issue.   Attend to that.   The medical testimony indicates the broken leg ''seems to be fairly well.''   When the fracture was reduced at the outset the bones did not knit blandly.

Measure of Damages: Future Medical Attention.

It seems the bones had been crushed somewhat and this crushing made the fracture a "comminuted" one. It seems both bones of the leg were broken, hence the fracture was a "compound" one. It seems that some of the flesh and ligaments got between the parts of this fracture. This fact was not discovered at the start and caused suppuration and failure to knit, thus giving rise to a "complicated" fracture.

Subsequently a serious operation was performed in the hospital and the bones wired together. It was several months healing. There is still pain in the wounded limb, and tenderness in the parts. The injury was of a sort that permanently shortened, and gave a limp to, the leg, and up to the time of trial (over a year) had prevented plaintiff's employment as a common laborer. Being without education, that was his only vocation.

There does not seem to have been any operation for the hernia. The doctors prescribed lying in a favorable position and rest. By such means the hernia was reduced, but the medical testimony agrees with common observation that the trouble is likely to recur. Plaintiff's doctor in testifying, asked for an opinion whether he would have trouble in the future from this rupture, replied: "He may have at any time." Another place the record shows these questions to the physician and his answers: "What about this rupture, will that continue in your opinion? A. I think it will. That is, I think if he strains himself it is likely to come out again. . . . Q. Does that rupture interfere with his lifting in any way in your opinion? A. Well, I think it would."

Under the medical testimony nothing short of an operation will put the dislocated testicle in the place nature designed for it; but there is no testimony tending to show that an operation is either necessary or advisable to protect or restore the integrity of its normal function or that its present condition is dangerous

to health, inconvenient or makes or tends to make it *functus officio*.

In this condition of the record we rule as follows on the first assignment:

(1) The testimony leaves the question of the reasonable probability or necessity of medical services to replace the dislocated testicle a matter of merest conjecture. There is nothing to show it would be safe or better to replace it by surgical means, hence that part of the instruction on the measure of damages allowing a recovery for future medical attention could not well stand on this part of the record.

In leaving this branch of the case we by no means rule that plaintiff is not entitled to recover substantial damages for the pain and suffering incident to the forceful dislocation of the part. It is ingeniously argued by appellant's learned counsel that the accident did not (and could not) cause the dislocation. They rest the argument on the fact that the doctors testified they never read of or saw an incident of the kind. That the size of the usual canal, protected, as it is, by muscular rings, excludes the idea that the testicle could be driven by force from nature's sack up and into the abdomen along this canal; but this testimony was merely advisory. We stress the fact there was testimony of lay witnesses, unimpeached save from these theories of the testifying doctors, that before the accident this man was normal in this particular and abnormal ever after. The testimony of the mother negatived the medical theory advanced, to-wit, that the progress of the testicle down had merely been arrested in the foetal stage (a common phenomenon) and that it never had been in place. That it is now dislocated and is in the region of the hernia is shown by both the lay and the medical testimony. Now, it is trite doctrine that the credit due the testimony of lay witnesses directed to establishing facts as against the advisory theorizing of the expert witnesses, is always for the

jury, not the court; for to all such expert speculative theorizing the suggestion of the Melancholy Dane applies: "There are more things in heaven and earth, Horatio, than are dreamt of in your philosophy." If some witnesses say "it couldn't" and some say "it did," what then? Does such divergence make an insoluble problem in jurisprudence—put the matter in the air, in suspension like Mahomet's coffin? Not at all. The common sense of the jury settles it.

(2) But when we come to the reasonable necessity for medical assistance in the future arising from the hernia and the leg we are of opinion there was substantial testimony upon which the challenged clause of the instruction on the measure of damages can rest. True, a doctor (long in prior attendance) had not attended this plaintiff for some time before the trial, but we cannot say as a matter of law that a leg so seriously injured as to incapacitate a man from common labor for a year and which is still painful and tender will not require medical attention and medicines in the future. To the contrary it would look entirely reasonable and probable, judging from the tendency of the proof, that such would be the case. The same, only to a greater extent, may be said of the hernia. When some of the abdominal walls are ruptured and the intestines have once protruded, as the uncontradicted evidence showed in this case, it is common knowledge that the trouble will with reasonable certainty recur from lifting or the vicissitudes of ordinary labor. The medical testimony runs on all-fours with that idea. We know and the jury knew medical attention in the future would be reasonably certain to guard the situation, or to reduce the recurring hernia or prevent strangulation. To the common sense then of the jury, guided by their conscience, their everyday experience, their sound judgment, their oaths, must be left the question; for there is no line of testimony by which the fact may be established to an absolute certainty.

To leave it to the jury is the best the law can do, for no case calls for better testimony than the case admits of. [Sotebier v. Transit Co., 203 Mo. 702; Mabrey v. Road Co., 92 Mo. App. l. c. 603; Feen v. L. I. R. R. Co., 116 N. Y. l. c. 382.] The rule is that adequate compensation may be recovered in a single action for all the natural consequences of a negligent act. That principle controls here. Future expenses from physicians rest upon the same grounds as the probable loss of future earnings. [Turner v. Boston & Me. R. R. Co., 158 Mass. l. c. 267.]

Moreover, if, in the state of the proof, defendant desired to limit the recovery for future medical services to a nominal amount, it should have tested out its right to do so by asking an instruction to that effect. [King v. St. Louis, 250 Mo. l. c. 514; State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19.]

(3) But if we were to allow appellant's contention out and out, to-wit, that the instruction was too broad in the particular in hand, we would still not reverse the judgment, because: Here is a case where the uncontradicted proof showed liability for past medical and surgical attention resulting from the injuries in the rise of $400. The same character of proof showed that the plaintiff, as a result of his injuries, had been out of employment for over a year and that his earning capacity was $15 per week. That would make his past loss in earnings from his labor over $720, or a total on those two items of $1120. Deducting that from his verdict of $4000, we have left a bit the rise of $2800 for future loss of earnings, for a permanent injury, a shortened and limping leg, pain and suffering from a compound fracture with subsequent complications, a hernia and a testicle dislocated by force. In the face of such facts showing a modest recovery for serious injuries, undisputed, it would be trifling with justice to suppose that the jury allowed anything of substance on the issue of future medical services; for the ver-

dict is all absorbed by 'referring it to damages plainly suffered and about which there can be no speculation. In that view of it we say that the error complained of, if error at all, becomes self-evidently harmless and, hence, nonreversible.

II. *Of assignment b.*

Recurring to the record, a summary sufficient to an understanding of the question whether there was error in overruling the supplemental motion for a new trial, follows: The accident happened on October 3, 1910. Suit was brought March 17, 1911. The answer was filed April 5, 1911. The trial was begun October 16, 1911. When court arose, the testimony not being all in, the trial was laid over until the next day, the 17th. At the close of that day for like reason it was laid over until the 18th, when it was completed and a verdict had. By its answer defendant interposed contributory negligence as a defense—contributory negligence with a specification, "to-wit, that plaintiff did not exercise due care in watching the direction in which he was driving." There was a showing by the city in support of the supplemental motion to the effect that it was unaware of the accident and had no notice until suit was brought, i. e., for the rise of five months. But there was a satisfactory countershowing to the effect that the city had immediate notice. Plaintiff and a witness driving with him testified to the effect there was a lamp post at the *locus in quo*, but that the lamp was not going. It seems to be conceded that at the time of the accident (6:30 p. m.) city lamps were due to be lighted. As we read it, the light at this point was of gasoline. After plaintiff was injured he worked his way to this lamp post and held himself up by it—his horse having broken from control and passed on a ways. While in this fix, a man and his wife drove up in a buggy and, ascertaining the trouble, the man took

*Margin note:* New Trial: Newly Discovered Witnesses.

plaintiff and drove him to his home. This man's name was Graffeman, but plaintiff did not know his name then or afterwards. It is not clear on what theory plaintiff needed the testimony of this witness, as there was plenty without it, and it does not appear that he took any steps to ascertain the name or to summon the man or his wife. Nor did he conceal information. The fact that plaintiff was taken home in the buggy of some person, coming on the scene after the accident, was known to the city long before the trial. It seems some attempt was made by the city to find out the name, and plaintiff, being inquired of, frankly stated he did not know it. Neither at that time, nor afterwards when his deposition was taken by the city, was plaintiff asked whether he knew any person who did know the name. At the first day of, and early in the trial plaintiff was on the stand in his own behalf as the first witness, and the following record was made on his cross-examination:

"Q. When you got out of the street you say you went over to this lamp post on the northeast corner? A. I hopped over, yes. Q. And then how did you get home? A. There was a man and lady come along in a horse and buggy. Q. Who were they? A. I do not know their names, and they took me on home in the horse and buggy and went and got the nearest doctor in the neighborhood. Q. You say you don't know who they were? A. No, I was there about twenty minutes before they came along. Q. Did you ask who they were? A. No, I did not; but the party that works in the brewery knows their names. Q. You never have seen them? A. I have seen them, yes. Q. When did you first see them? A. The night this happened. Q. I mean after? A. No, I ain't seen them after that. Q. You don't know where they live or anything about them? A. No, I couldn't say where they live. Q. Who is the person at the brewery that knows them?

262Mo30

A. Fred Brandt. Q. How do you spell that name?
A. I don't know. Q. Brandt? A. Brandt. Q. What
does he do at the brewery? A. He is in the office, clerk
there; as far as I see, he is writing."

Reference having been made in the foregoing tes-
timony to a "brewery," it will do to say that the city
knew all along that plaintiff was a driver for the Union
Brewery Company of St. Louis. His petition so states
and the fact stands conceded. It seems the Fred
Brandt mentioned was working for the same brewery
at the time of the trial and had been for a long time in
some minor official capacity. It seems also he was
easily accessible by telephone or messenger and that he
actually knew the name and the place of residence of
the Graffeman who carried plaintiff home, and of his
wife. This Graffeman was a member of a well-known
family, easily accessible, but, I believe, had no tele-
phone. It is conceded by the city that after the fore-
going testimony over twenty-four hours went by, it is
contended by respondent that over forty hours went by,
before this Graffeman was located. No inquiry was
started on the first day as we read the record, nor on
the second day of the trial, and then nothing but the
telephone was used. No subpoena was issued. No at-
tempt was made to have any officer, charged with the
duty of locating witnesses or summoning them, attend
to that duty, but the trial flowed on unruffled to the
end. Presently after an adverse verdict and judg-
ment, the witness Graffeman and his wife were located
and an affidavit was procured from each in substance
to the effect that the street light in question was going
when they came upon the scene. The city had con-
tented itself with submitting the case on the question
of light or no light on mere negative testimony that no
complaint had been made of the absence of a light at
the time and place. On such record, the trial judge
was of opinion that due diligence was not shown and
we are of the same opinion. If it be conceded to the

city that the testimony was material on its issue of
contributory negligence, as tending to show that the
driver of a beer wagon drove into an open hole within
the radius of the light of a street lamp, yet when it
allowed the trial to progress for a day or two to its
consummation, warned of the existence of the witnesses
and armed with the information that the names of the
witnesess were in the possession of Brandt, it seems
clear that due diligence was not used to obtain the tes-
timony at the trial. As in the issue of negligence, so it
is in diligence, to-wit, what is due diligence varies with
the facts and circumstances of each case. Let it be
assumed (which is an assumption of doubtful stability)
that defendant was diligent in preliminary prepara-
tion, yet here there was an emergency sprung and sharp
diligence was necessary after notice. Defendant after
it had notice made no objection to going on with the
trial, no objection to the submission to the jury, asked
no recess or similar favor at the hands of the trial
judge, but stood mute, folded its arms and suffered
the issue to be determined adversely, content to take
its chances with the testimony at hand. We overrule
the assignment on the authority of State v. Nickens,
122 Mo. 607; State v. McKenzie, 177 Mo. 1. c. 716;
Devoy v. Transit Co., 192 Mo. 197; and Porter v. St.
Joseph Stock Yards, 213 Mo. 372.

The doctrine of this court is the Georgia doctrine
(*vide* the McKenzie case, supra): "The party must
show, first, that the evidence has come to his knowl-
edge since the trial; second, that it was not owing
to the want of due diligence that it did not come sooner;
third, that it is so material that it would probably pro-
duce a different result if the new trial was granted;
fourth, that it is not cumulative only; fifth, . . .;
sixth, that the object of the testimony is not merely
to impeach the character or credit of a witness." The
rule thus laid down is stringent, but useful and ought

not to be relaxed. Measured by that rule, appellant has no foot to stand upon in its second assignment of error.

Moreover, even if the testimony of these two witnesses had been given at the trial, yet it is not at all clear the result would not have been precisely the same. With a street and a hole in the street flooded with water, how would the glimmer of a street lamp give plaintiff notice of the depth of the hole so that his driving in it would have made him guilty of contributory negligence as a matter of law? Or how would it have persuaded a jury that he was guilty as a matter of fact?

Entitled to one fair trial, the city, we think, got it. Let the judgment be affirmed. All concur; *Bond, J.,* in result.