MIKE BOBOS, JR., v. KREY PACKING COMPANY, Appellant.—19 S. W. (2d) 630.

Court en Banc, June 29, 1929.

*Bryan, Williams & Cave* for appellant.

*Foristel, Mudd, Blair & Habenicht* for respondent.

RAGLAND, J.—This is the second appeal in this case. The first is reported in 317 Mo. 108, 296 S. W. 157-161. There was a mistrial prior to the one in which that appeal was taken: the present appeal therefore grows out of the third trial of the cause.

The action is one for personal injuries. On the 29th day of October, 1920, plaintiff, then a boy sixteen years of age, was in the employ of defendant at its packing plant in the city of St. Louis: having completed his duties for the day, on the date just mentioned, he left the plant and started walking home. When he had gotten a

short distance from the plant, he looked back and saw one of defendant's trucks, heavily loaded with meat, approaching; the meat was being taken from the plant to defendant's warehouse or place of storage in another part of the city. As the truck came near, plaintiff left the sidewalk on which he had been walking, stepped out into the street and raised his hand as an indication to the driver that he wished to ride. The truck thereupon slowed down and came to a stop: it was being driven by one Reinert, another of defendant's employees. When the truck had come to a stop, plaintiff grasped the handhold on the side of the cab, put one foot on the step and was pulling himself up so as to take a seat at the side of the driver. While he was in the act of doing so the truck suddenly started forward, causing the plaintiff to fall to the street. A front wheel ran over him, crushing his right hip and otherwise injuring him. He lay in a hospital for eighteen months: he underwent three or four operations: he suffered excruciating pain: he will be an invalid and a cripple during the remainder of his life. The jury awarded him damages in the sum of $17,500.

On this appeal no error is assigned with respect to the admission or exclusion of evidence, the giving or refusing of instructions, or the size of the verdict: all of appellant's grievances are based on the alleged misconduct of plaintiff's counsel.

On the trial the defendant endeavored to show that plaintiff attempted to climb onto the truck while it was moving: that it never stopped for him to get on. Whether it had stopped, or was still proceeding along the street, was practically the only contested issue of fact. The only eye-witnesses to the occurrence as a whole were plaintiff and Reinert, the driver.

The defendant carried indemnity insurance in the American Automobile Insurance Company. On the day following plaintiff's injury, one Phelps, a representative of the Insurance Company, went to the hospital for the purpose of getting a statement from plaintiff with reference to the casualty and the manner in which it had happened. According to plaintiff's testimony: Phelps told him in substance that Reinert would be prosecuted unless plaintiff's statement exonerated him; he then questioned plaintiff at length, writing down what purported to be the answers given; at the conclusion of the interrogation plaintiff, without reading or having read to him the paper so written, signed the same at Phelps's request. It seems that the paper contained the statement that the truck had not stopped when plaintiff attempted to get on it. At the time of the trial Phelps was in Philadelphia, but still in the employ of the Insurance Company.

There was evidence tending to show that one Wallace was president of the defendant corporation; that Beckmeyer and Price were

employees; that the defendant, being somewhat perturbed as to what Reinert would testify to if called as a witness on the trial, sent Price to him to request that he, Reinert, would come to Wallace for an interview; that upon Reinert's refusing to comply with the request, Wallace sent Beckmeyer to him to ascertain if he was going to be a witness, and if so for him, Beckmeyer, to accompany Reinert to court. Reinert was present in the court room during the trial. He had been subpoenaed by both parties, but neither called him to the witness stand. At the time of the trial he was not in the employ of defendant, and had not been for five years.

At the opening of the trial, plaintiff's counsel requested defendant's counsel to accompany him to the bench for a conference with the court, out of the hearing of the jury, touching the propriety of propounding certain questions to the jurors on their *voir dire*. Thereupon defendant's counsel, in the presence of the jury panel, and while seated at the counsel table said:

"If you want to prove that an insurance company is interested in this case, I will admit that. The American Automobile Insurance Company is defending this case, and I am appearing here as attorney on behalf of the American Automobile Insurance Company and on behalf of the Krey Packing Company for the excess, and you need not take the time to put this in the record, as I am admitting all you want to prove."

Subsequently, and while defendant's counsel was examining the jurors on their *voir dire*, the following occurred:

"MR. ELY: I am here representing the Krey Packing Company in the defense of this lawsuit. I am also here representing the American Automobile Insurance Company, who issued an indemnity policy to the Krey Packing Company, agreeing to indemnify the Krey Packing Company for any judgment you might return against them up to the amount of $5,000. I want to lay my cards on the table and advise you gentlemen of that fact. Now, I want to ask you gentlemen whether the fact that the American Automobile Insurance Company has issued such a policy of indemnity agreeing to indemnify the Krey Packing Company for any judgment you might return against them up to the amount of $5,000 would cause any of you gentlemen to return a verdict against my client, or whether you gentlemen will be governed solely by the evidence and the instructions of the court?

"MR. HABENICHT: I don't know the exact amount of the policy carried by the defendant. . . .

"MR. ELY: The file I have here shows five thousand dollars is the policy limits. Mr. Habenicht says he was advised it was ten thousand dollars, but whether it was five or ten thousand dollars, it should be thoroughly understood, and I want you jurors to tell me, any of

you that don't thoroughly understand it, that the fact that there is insurance has nothing whatever to do with your decision in this case, but that is merely to indemnify the Krey Packing Company for any judgment that you might return against them up to the amount of the policy. The fact that they have that much insurance does not mean, whether five or ten thousand dollars, does not mean that you have any right to go out and return a verdict for five or ten thousand dollars because they have that much insurance, and you won't do that, will you?''

During the *voir dire* examination the following also occurred:

''Mr. Habenicht: . . . Now, gentlemen, in this case you will learn that, like in most all automobile cases, the American Automobile Insurance Company is interested.

''Mr. Ely: Now, I object to that remark. . . . My objection is to the statement that 'in this case, as in most automobile cases, you will learn that the American Automobile Insurance Company is interested.'

''The Court: I will have that stricken out.

''Mr. Ely: And I move this jury panel be discharged and a fresh panel drawn.

''The Court: That motion will be overruled.

''Mr. Ely: Note an exception.''

While plaintiff's counsel was making his opening statement to the jury, he said:

''Bobos was then removed to the City Hospital, where he received surgical attention, and the evidence will show, further, that on the day following this accident, while he was lying in bed in the City Hospital with a crushed hip and suffering from severe pain and shock, a representative of the American Automobile Insurance Company by the name of Phelps came down to see him . . . and Phelps then proceeded to ask Bobos some questions and to write something down on some paper, and at Phelps's request Bobos signed this paper without ever reading it. Before Phelps left the hospital he told Bobos that he would return to the hospital again at a later date and see him, and see how he was getting along; and the evidence will show, further, that during his first confinement at the hospital Bobos was there for a period of about eighteen months. And as this boy lay there eighteen months, in the hospital, this man Phelps never came back, nor any one else from the American Automobile Insurance Company never came back to see him.''

Thereupon the following occurred:

''Mr. Ely: Now, if your Honor please, I think this has gone far enough, and I want to object to the statement that Mr. Phelps or anyone else—

"The Court (interrupting): 'Or anyone else connected with the American Automobile Insurance Company' may be stricken out.

"Mr. Ely: And I move this jury be discharged because of the misconduct of plaintiff's counsel.

"The Court: The motion will be overruled.

"Mr. Ely: Note an exception."

When the case was being argued to the jury the following colloquy occurred:

"Mr. Habenicht: . . . Now, gentlemen, he tells you that this boy's first statement was that the truck did not stop.

"Mr. Ely: If your Honor please, I object to Mr. Habenicht misquoting and going out of the record. What he knows I said to him was that the first petition stated that the truck was not stopped, and I dare you to read it. You know what I said.

"Mr. Habenicht: Gentlemen, you know what he said, and didn't I call him on it? Didn't I say, 'Look at it. If I signed that petition, or Mr. Foristel signed it, I will eat it?' And he very reluctantly got down to another subject. Now, that is just one of those maneuvers that these wonderful defenders of insurance companies are capable of pulling off.

"Mr. Ely: If the court please, I object to that remark, and move the court that the jury be discharged because of the improper conduct of Mr. Habenicht in stating that that is another method that these defenders of insurance companies use.

"The Court: Well—

"Mr. Habenicht (interrupting): If your Honor please, before you rule on that I would like to say that Mr. Ely admitted in open court, in the presence of this jury, that he was representing the American Automobile Insurance Company and was also representing the Krey Packing Company for the excess.

"Mr. Ely: That is right. I did and I am. But that does not justify any such unfair remark, and I move the jury be discharged.

"The Court: Objection sustained as to the remarks, and overrule the motion to discharge the jury.

"Mr. Ely: Except."

During his closing argument to the jury, plaintiff's counsel made frequent comments on defendant's failure to produce Reinert, Wallace, Price and Phelps as witnesses. Among others, the following:

"Do Wallace and Price, under oath, tell you what their motive was in making these pilgrimages or having them made to Reinert's home? . . . And Mr. Phelps has gone to Philadelphia to take up other work for the American Automobile Insurance Company and he is never brought in this case."

In each instance defendant moved the discharge of the jury, but its motion was overruled by the court, and an exception noted.

Appellant assigns as prejudicial misconduct on the part of plaintiff's counsel during the trial of the cause the following: (1) The statement, "like in most automobile cases, the American Automobile Insurance Company is interested," made while examining the panel of jurors; (2) the statement, "as this boy lay there eighteen months in the hospital this man Phelps never came back, nor any one else from the American Automobile Insurance Company never came back to see him," made in the opening statement to the jury; (3) the statement, "Now, that is just one of those maneuvers that these wonderful defenders of insurance companies are capable of pulling off," made in the closing argument to the jury; and (4) comments made during such argument on the failure of the defendant to produce Reinert, Wallace, Price and Phelps as witnesses.

We have endeavored to set forth enough of the record to show the setting of each of the statements complained of: in reality the entire record must be read in order to get a just appreciation of the relation of each to the proceeding as a whole. Throughout the trial, from the beginning to the end, there was a running fire of comment between counsel: thrust and counter-thrust: charge and counter-charge. There was no display of ill humor: it was just a battle of wits. Now trial by battle, with whatever weapons, has supposedly been relegated to the past: modern procedure is solicitous that the interests of the real parties—the litigants—be not lost sight of by the jury through their admiration of the feats of counsel. But counsel for one party cannot himself indulge in badinage, improper remarks or arguments, or open the door to matters not pertaining to the issues, and then claim a reversal because of a similar departure on the part of opposing counsel in answering him. The supervision of the trial and the control of the arguments of counsel to the jury are committed in the first instance to the discretion of the trial court. Unless there has been a palpable abuse of that discretion, it is not subject to review. With these general rules in mind we proceed to a consideration of appellant's specific assignments.

(1) "Like in most automobile cases, the American Automobile Insurance Company is interested" carried with it the implication, appellant asserts, that the Insurance Company made a general practice of litigating all claims against persons it had insured, regardless of the merits of the claims. The full statement was: "Now, gentlemen, in this case you will learn that, like in most automobile cases, the American Automobile Insurance Company is interested." It was merely preliminary to the questioning of the jurors touching their interest, if any, in the Insurance Company, or their acquaintance or relationship with persons who were so interested. The language used, and its alleged implica-

tion, would no doubt have passed unnoticed but for the captious criticism made of it. The incident was trivial.

(2) If Phelps, the representative of the Insurance Company, had obtained from plaintiff by trick or artifice the latter's signature to a writing which contained a false statement, namely, that plaintiff climbed onto the truck while it was moving (all of which plaintiff asserted), then all of the facts and circumstances touching such deception, including Phelps's expressions of sympathy and solicitude with reference to plaintiff's misfortune and their insincerity as subsequent events tended to disclose, were admissible in evidence in rebuttal, following the offer of the paper by defendant. Plaintiff's counsel knew that the defendant was in possession of a paper signed by plaintiff, and he had every reason to believe that it would be offered in evidence. He was therefore within his rights in outlining his proof with reference to it, as to every other feature of his case, in his opening statement to the jury.

(3) In his argument to the jury defendant's counsel said that the first petition stated that the truck was not stopped. In response to this plaintiff's counsel in closing said: "Now, gentlemen he tells you that this boy's first statement was that the truck did not stop." At this juncture defendant's counsel interrupted, saying: "I object to Mr. Habenicht misquoting and going out of the record. What he knows I said to him was that the first petition stated that the truck was not stopped, and I dare you to read it. You know what I said." This effort to badger him into reading an abandoned pleading which had not been offered in evidence, and thus bring into the case matters outside of the record, plaintiff's counsel characterized as a "maneuver." And such it seems to have been, even from the cold record: a deliberately planned "maneuver." The further characterization: "these wonderful defenders of insurance companies," owing to the supposed prejudice of juries against such companies, should not have been made. However, plaintiff's counsel had great provocation, and we are of the opinion that, the entire situation considered, defendant suffered no harm.

(4) The only person, other than plaintiff, who knew whether Reinert had stopped the truck, and then suddenly started it up while plaintiff was in the act of getting on, was Reinert himself. If he did so stop and start the truck, then he as well as his then employer was legally liable for plaintiff's injuries: their interests in the subject-matter of the litigation were in that respect identical. If compelled to testify it would have been natural for him to have wanted to acquit himself of all fault. It cannot be said therefore that as a witness he was as

available to plaintiff as to defendant. From Reinert's failure to take the witness stand, he being present in court during the trial, the inference could well be drawn that he could not truthfully testify either that he did not stop the truck for plaintiff to get on, or, if he did, that he did not start it while plaintiff was in the act of climbing up. And the inference was made all the stronger by the testimony that Wallace was sending Price and Beckmeyer on pilgrimages to Reinert's house in an effort to ascertain whether he would be available as a witness for the defense. All of these things were proper matters for comment in the argument to the jury. [Winkler v. Railroad, 10 S. W. (2d) 649, 650-651, and authorities cited.]

The Insurance Company is the principal defendant in the case. At the time of the trial Phelps was still in its employ. Its failure to produce him to testify concerning so vital a matter as the alleged statement made to him by plaintiff on the day following the accident, that the truck had not stopped, was a fair subject of comment.

Finally, remarks and arguments of counsel, however improper or impertinent, do not constitute reversible error, unless prejudice to the opposing side results. The record in this case reflects nothing of that kind. It is inconceivable that, under the evidence, the jury could have found as to the contested issues of fact other than they did, and their assessment of the damages was unusually conservative.

The judgment of the circuit court is affirmed. All concur.