# MARCH, 1930.

MABLE DOYLE, RESPONDENT, v. SCOTT'S CLEANING COMPANY, A CORPORATION, APPELLANT, CLIFFORD G. APPLER, DEFENDANT.—31 S. W. (2d) 242.

St. Louis Court of Appeals. Opinion filed September 15, 1930.

*William Kohn* for appellant.

*Douglas H. Jones* and *C. P. Berry* for respondent.

BECKER, J.—Plaintiff's action is for assault and battery against Scott's Cleaning Company and Clifford S. Appler. Plaintiff's petition alleges that the assault was committed by Appler, an employee of the cleaning company. Judgment resulted against both defendants for $3500 actual and $1000 punitive damages, from which, in due course, the Scott's Cleaning Company alone appeals.

At the beginning of the case the defendant, Scott's Cleaning Company, objected to the introduction of any evidence on behalf of plaintiff on the ground that the petition does not state a cause

of action. This objection was overruled, which ruling is here urged as prejudicial error.

In support of its contention it is argued that the demurrer *ore tenus* was not made in an effort "to reach mere uncertainty or indefiniteness of averment or the defect of pleading legal conclusions," but because on the facts as they appear in the petition the defendant, Appler, in committing the assault, was not acting for or on behalf of Scott's Cleaning Company, or in furtherance of its business, or in pursuance of his duties as Scott's servant, or within the scope of his employment as such, and therefore plaintiff's petition stated no cause of action.

We set out so much of plaintiff's petition as in our view is necessary for a determination of the point in hand.

"Plaintiff, for her cause of action, states as follows:

"That at all times mentioned herein plaintiff resided with her husband and child at 3624a North Taylor avenue, St. Louis, Missouri; that on or about April 20, 1926, Scott's Cleaning Company, delivered a coat to said defendant to deliver same back to plaintiff at her home on or about the following Tuesday, April 27, 1926; that on Saturday, April 24, 1926, defendant, Scott's Cleaning Company, acting by and through defendant, Clifford C. Appler, who was then and there in the employ of defendant, Scott's Cleaning Company, and was driving a truck, for it, delivered said coat, cleaned, to plaintiff at her home, but at that time plaintiff did not have the money to pay for the cleaning of said coat, and on that account she requested said driver, defendant, Clifford S. Appler, to return with the coat on the next following Monday; that thereupon said defendant driver became angry and said that he had been sent to the wrong address, that someone had phoned for the coat, and said defendant driver was very rude and disrespectful in his manner and tone of voice in addressing plaintiff; that thereafter in the evening of Saturday, April 24, 1926, plaintiff and her husband called at defendant Scott's Cleaning Company's place of business for said coat and received and paid for the same; that on Tuesday, April 28, 1926, plaintiff phoned to defendant Scott's Cleaning Company to call at her home for a suit of clothes of her husband to be cleaned; that in response to said phone call said defendant, Scott's Cleaning Company, did call at plaintiff's home for said suit, and did receive the same from plaintiff, the said defendant, Scott's Cleaning Company, then and there acting by and through the said driver, defendant, Clifford G. Appler; that when plaintiff handed said suit to said driver, the latter snatched the suit from plaintiff's hands in a rude manner and gruffly said, 'Ready Friday;' that on Friday, April 30, 1926, the defendant, Scott's Cleaning Company, acting by and through the said driver defendant, Clifford G. Appler, delivered said suit, cleaned, to plaintiff's home, and plaintiff's hus-

band, being at home at that time, went to the door to receive said suit and pay the charges thereon; that when plaintiff's husband reached their porch where said driver was waiting with said suit, he (plaintiff's husband) asked said defendant driver if he could be more courteous in his conversation when delivering goods; that said defendant driver asked, 'What are you talking about, discourteous remarks?' or words to that effect; that plaintiff's husband, thinking that he might be mistaken as to the identity of the driver, called to plaintiff and plaintiff went to the said porch and told her husband that he was the same driver who had called before; that said defendant driver thereupon became angry and asked plaintiff and her husband if 'you're looking for trouble;' that plaintiff replied 'no,' and requested said defendant driver to leave, whereupon said driver wrongfully and intentionally struck plaintiff in her face with his fist, knocking plaintiff to the floor and inflicting upon her the following injuries:

"Plaintiff received a fracture of her skull in the occipito pariental region and suffered a severe concussion of the brain; plaintiff's nose was fractured and so injured that she suffered severe hemorrhage from her nose. . . ."

We note that the only demurrer offered by defendants below was a demurrer *ore tenus*, objecting *in limine*, because the petition allegedly stated no cause of action. It needs no citation of authorities that such a demurrer has not been regarded in this State as reaching the alleged defects in a petition to nearly the same extent or purpose as the formal written demurrer provided by our Code of Pleading. In fact our Supreme Court has directly ruled that a demurrer *ore tenus*, in law, has no more effect in reaching a bad petition than has a motion in arrest, which to an extent is fully covered by our Statute of Jeofails. Such demurrer will not reach mere uncertainty or indefiniteness of averment or the defect of pleading legal conclusions. [State ex inf. Major v. Lbr. Co., 260 Mo. 212, l. c. 282, 169 S. W. 145.]

The petition, among its essential allegations, alleges that the defendant, Appler, was the agent and employee of the defendant, Scott's Cleaning Company; that on Friday, April 30, 1926, the date of the alleged assault, the defendant, Scott's Cleaning Company, acting by and through the said driver, Appler, delivered the cleaned suit to plaintiff's home; that plaintiff's husband went to the door to receive the suit and pay the charges thereon and when he had got out to the porch where defendant's driver was waiting he asked Appler if he could not be more courteous in his conversation when delivering goods; that upon the driver inquiring what discourteous remarks he had reference to, plaintiff's husband, thinking he might be mistaken as to the identity of the driver, called plaintiff; that plaintiff then came to the porch and identified the

driver as the one who had called theretofore; that the defendant's driver became angry and asked plaintiff and her husband if they were looking for trouble; that plaintiff replied "no" and requested the driver to leave, "whereupon said driver wrongfully and intentionally struck plaintiff in her face with his fist, knocking plaintiff to the floor," doing her serious injury.

Plaintiff's petition thus alleges that defendant's agent went to plaintiff's home to deliver a suit and collect the charges for the cleaning thereof, which beyond question was the business of defendant, Scott's Cleaning Company. So too the complaint made to the defendant, Appler, dealt with an alleged discourtesy in his conduct of defendant's business. It is but natural that plaintiff's husband would inquire of Appler regarding any believed discourtesy on Appler's part to his wife which arose in connection with and out of the business done through Appler as agent for the Scott's Cleaning Company. The adjustment of such a complaint would be to the interest of the master's business and as the complaint arose out of the alleged conduct or action of Appler it was not without reason that the matter in the first instance should be called to his attention.

As was said in Maniaci v. Express Co., 266 Mo. 633, 1. c. 644, 182 S. W. 981: "It is not imposing too great a hardship upon either corporations or individuals, to require them to respond in damages to legitimate patrons, for unprovoked, wanton and malicious assaults, inflicted upon them, while in the very act of settling their controversies with the agent of the carrier. The conclusion thus reached is fully sustained by the great weight of modern jurisprudence." And in the course of the opinion the case of Richberger v. Express Co., 73 Miss. 161, is adverted to approvingly. In the Richberger case a petition was held to be good which alleged that plaintiff had been made to pay overcharges on express matter by the local agent of the defendant express company; that upon the matter being taken up with the general agent it was arranged that the amount of the overpayment should be paid back to plaintiff; that when plaintiff, in conformity with the instructions from the general agent, went to the local office, the agent in charge thereof paid back the amount of the excess "to plaintiff, and required plaintiff to sign a receipt for the same, and when plaintiff signed and delivered said receipt to said agent, the said agent did then and there immediately upon the reception of said receipt, and while plaintiff was there in the business office of said company, wilfully, wantonly, oppressively and wrongfully curse, abuse, insult and maltreat plaintiff, because plaintiff had demanded and received from said company the overcharge as aforesaid."

"The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or

the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty and authority, and inflicts an unjustifiable injury upon another.'' [Rounds v. Ry. Co., 64 N. Y. 1. c. 134.]

It is the general doctrine of the law that a principal is liable to the third party not only for the negligence of its agent in the transaction of the business of the agency, but likewise for the frauds, torts or other wrongful acts committed by such agent in and as part of the transaction of such business. This rule, *respondeat superior,* is founded upon public policy and convenience; for in no other way could there be any safety to third parties in dealings either directly with the principal or indirectly through the instrumentality of agents. In every such case the principal holds out the agent as competent and fitted to be trusted; and thereby in effect he warrants his fidelity and good conduct in all matters within the scope of his agency.

Under the facts in this case, and upon authority of what was ruled in the Maniaci case, supra, and cases cited therein, we hold that the petition states a good cause of action and that the demurrer *ore tenus* thereto was properly overruled.

It is next urged that the instruction in the nature of a demurrer to the evidence requested by defendant at the close of the case should have been given because the evidence showed that at the time of the assault Appler was not engaged in any duty he owed the Scott's Cleaning Company as its servant. It is argued that the business that brought Appler to the scene of the altercation and which he was there to transact as agent for the Scott's Cleaning Company, had been fully consummated prior to the argument preceding the assault; that the suit of clothes had been delivered and the charges paid before the argument began and that that was all of the business Appler was there to transact for Scott's Cleaning Company; that the argument with reference to Appler's personal conduct several days before, was in connection with a tranaction which was closed so far as Scott's Cleaning Company was concerned, and that therefore in committing the assault Appler was not executing the services he was there to execute for Scott's Cleaning Company, nor was he at the time within the scope of his employment.

In our view, even though it be conceded that the suit had actually been handed over by Appler to plaintiff's husband, and the money in payment for the cleaning thereof had actually been paid to Appler, the discussion as to whether or not Appler had been discourteous to plaintiff when he had called at the house several days before was a matter which directly concerned and affected defendant's busi-

ness. Appler himself testified that after he had handed plaintiff's husband the suit and had received from him payment thereon, and was in the act of leaving, plaintiff's husband asked him if he was the regular driver on the route, to which he replied: "Yes, was there something the matter?" and that when plaintiff's husband thereupon stated, "Well, I think you are a pretty discourteous driver," and "if you cannot refrain from being discourteous here maybe you could be made to," Appler replied: "If I have been discourteous I don't know anything about it; but I would be glad to rectify anything I have done out of the way," and asked "is Mrs. Doyle at home?" and upon receiving the reply that Mrs. Doyle was at home Appler asked, "Will you call her down and let her tell me what I have said out of the way and if I have said anything out of the way I will try to straighten it out with her?"

From this testimony of Appler it is apparent that upon complaint being made as to his previous conduct Appler felt it was a matter that he should have the specific complaint made to him by Mrs. Doyle with a view, as he himself expressed it, of straightening the matter out with her. That action of Appler was the proper conduct in light of the complaint, the complaint dealing directly with Scott's Cleaning Company's business, which complaint, if well taken, should be atoned for, and if it was not warranted a proper endeavor made by Appler to satisfy Mrs. Doyle that no discourtesy on his part was intended, so as to keep the goodwill of Mrs. Doyle and retain, if possible, such future business as she might have, and in our view made out a case for the jury as to whether or not the matter was one in furtherance of the master's business, and upon all of the testimony in the case whether it was within the scope of Appler's employment. The demurrer was accordingly well ruled.

At the request of defendants the court gave the following instruction on the measure of damages:

"The court instructs the jury that if you find for the plaintiff you will award her such damages as you may believe from the evidence will fairly and reasonably compensate plaintiff for the injury, if any, you may believe from the evidence plaintiff to have sustained as the natural and probable result of the acts of defendants mentioned in evidence, if any.

"And if the jury further find and believe from the evidence that the acts of defendants, mentioned in evidence, if any, were malicious wilful and wanton, then you may allow her such further damages, known in law as 'exemplary,' as will be a punishment to defendants and a wholesome warning to others."

It is contended that this instruction is erroneous in that it permits recovery in damages for injury resulting from any of the acts of defendants mentioned in the petition which would include injury to plaintiff's feelings resulting from Appler's alleged acts

of misconduct on previous occasions, and the mental anguish and distress resulting therefrom, instead of merely damages for the injury resulting from the assault and battery, which is the basis of the action. This assignment of error is hypocritical.

This instruction on the measure of damages is based upon a finding by the jury for plaintiff under other instructions in the case. An examination of the main instruction, which covers the entire case and directs a verdict, shows that the facts necessary to be found by the jury as a prerequisite to a finding for plaintiff in the case, clearly indicates to the jury that it was only the acts with reference to the assault for which plaintiff is seeking redress and to which their verdict was required.

It is further urged that the allowance of punitive damages against Scott's Cleaning Company is authorized by this instruction for any malicious acts on the part of either defendant, regardless of whether any such acts of Appler mentioned in the evidence was chargeable to appellant.

The main instruction among other things specifically requires that before the jury could find for plaintiff and against defendants that they must find and believe from the evidence that "defendant Appler was at all the said times defendant's, Scott's Cleaning Company duly authorized agent and employee in charge of delivering said clothing and collecting charges therefor and acting within the scope of his employment and in the performance of his duties touching the matters in question." In this situation we must rule this assignment of error adversely to appellant.

We have examined other matters complained of but find no error prejudicial to the rights of appellant. The judgment should be affirmed. It is so ordered. *Haid, P. J.,* and *Nipper, J.,* concur.