255 S.W.2d 127 (1953)
BARGER
v.
GREEN et al.
No. 21794.
Kansas City Court of Appeals. Missouri.
February 2, 1953.
*128 Poague, Poague & Brock, Haysler A. Poague and Barkley M. Brock, Clinton, F. M. Brady, Warsaw, for appellants.
William J. Cason, Kelso Journey, Clinton, for respondent.
BROADDUS, Presiding Judge.
This is an action by plaintiff, Jeff Barger, against defendants Farmers Elevator & Supply Company and Clarence Green, for damages resulting from an assault. The suit originated in the Circuit Court of Henry County and upon application for a change of venue by plaintiff was sent to Benton County. The trial there resulted in a verdict and judgment for plaintiff against defendants in the sum of $3900. Defendants have appealed.
Defendant, Farmers Elevator & Supply Company, operated a poultry, grain and farm supply business in Clinton, Missouri. Defendant Green was in charge of its poultry and egg department at its place of business. A part of the business carried on by the Farmers Elevator consisted of buying poultry and eggs from farmers. In purchasing chickens it frequently found it necessary to reject certain ones because of physical defects. As an accommodation to its patrons the Farmers Elevator undertook to dispose of the culls.
Several years prior to the occurrence here involved plaintiff entered into an agreement with defendant Green whereby plaintiff would undertake to haul away all of the rejected chickens from the plant regularly and that, in exchange for this service, he could have all of them. Plaintiff had to take the dead ones as well as the sick ones. It was his practice to care for and treat the sickly chickens until they recovered and then sell them.
A few weeks prior to the alleged assault plaintiff discovered that the chickens he was getting were all so bad that none could be saved. He discovered that the better of the rejected chickens were being given to another man. On October 28, 1950, at about 3:30 o'clock in the afternoon plaintiff went to the Farmers Elevator plant to see about getting some of the rejected chickens. Upon arriving he found again he was only getting the culls of the culled chickens and that another man was getting the better culls. Plaintiff then went to see Mr. Welty, the president and manager of defendant, Farmers Elevator & Supply Company, about the matter of his being cheated out of these chickens. Mr. Welty referred him to defendant Green. Plaintiff went to see Green and it was during plaintiff's conversation with Green in an attempt to adjust his complaint that the assault in question took place. After receiving no satisfaction from Green, plaintiff told Green, "I thought you were a man of your word. You can take the chickens and go to hell with them." Then Green suddenly struck plaintiff on the left side of the head with his fist. Plaintiff held his hands up and said: "Don't hit me, I am going out." Plaintiff then turned to go and, as he was walking to the door, Green hit him again and ran against him, pushing him out through the door, off a loading dock onto a gravel street, breaking his leg near the hip. While plaintiff was lying in the street he asked Green to help him up but Green refused. A few moments later plaintiff obtained assistance and was taken to his home. The next day he was taken to a hospital where he remained 34 days and then was confined to his bed at home for six months. As a part of his treatment several steel screws were placed in his leg to hold the ends of the bones together. These steel pins were in his leg about five months. At the time of the trial plaintiff could get about only with assistance and by using a cane.
At the time of the trial plaintiff was 70 years of age, but his general physical appearance was that of a man about 75 years of age. He had suffered a stroke of paralysis several years prior to the date of *129 the assault. The stroke left him badly crippled. Defendant Green was 46 years of age at the time of the trial.
Defendants first contend that "the court erred in refusing to discharge the jury and in refusing to instruct the jury to disregard certain statements made by plaintiff's counsel in final argument to the jury."
Prior to the voir dire examination of the jury plaintiff's counsel asked the attorneys for defendant, Farmers Elevator & Supply Company "if there is any insurance company, or liability or indemnity company, interested in the outcome of this case?" The reply was: "Yes, there is, Lumbermans Mutual Casualty Company." During the course of the voir dire examination plaintiff's counsel first inquired of the panel "if any of you are members of the MFA, Missouri Farmers Association?" It had been previously stated by defendants' counsel that defendant, Farmers Elevator & Supply Company, is "an associate" of the MFA, and "in dealing with the other plants of the MFA it receives a dividend credit for any gains made by those other plants." Two members of the panel were members of the MFA, another's son was the manager of its plant at Lincoln in Benton County. After examining the three and being assured by them that, if selected, (two were) they would try the case fairly, plaintiff's counsel then inquired: "Now, are any of you ladies and gentlemen employees of, have you ever been employees of the Lumbermans Mutual Casualty Company, insurance company, having its home office in Kansas City, Missouri? I suppose by your silence, none of you have ever been employees of that company, Let me ask you if any of you are policy holders in the Lumbermans Mutual Casualty Company, having its home office in Kansas City, Missouri ? Do any of you people have relatives who are employees of the Lumbermans Mutual Casualty Company, having its home office in Kansas City, Missouri? Any of you stockholders or in any way connected with this insurance company ?"
There were five attorneys engaged in the trial of the instant case, two representing plaintiff and three defendants. Each made an argument to the jury. During his argument one of defendants' counsel said: "The law is whether a man can come into a respectable place of business and cause a disturbance and abuse people and start a fight and then come back and, off a farmers organisation collect a bill of damages after he gets hurt * * *." Another stated: "Because he was so unfortunate there to fall and to be injured is no reason to sting this company * * * and "That is no reason why this company should be penalized * * *." The third said: "He wants our money, he doesn't want our sympathy, and he don't want your sympathy, he wants our money," (Emphasis ours.)
Then followed the argument of Mr. Cason, one of plaintiff's attorneys. His remarks which defendants say were intended to inform the jury that defendants had liability insurance and were therefore improper follow: "The attorneys said we were trying to sting this Farmers Elevator Company, that we were trying to get after their money. I don't want you people to worry about that. We attorneys will worry where the money is coming from and how to satisfy this judgment, and nobody is going to be stung. I can't tell you why, but don't worry about stinging any Farmers Elevator Company." The trial court sustained defendants' objection to the above remarks but denied their request to discharge the jury.
There can be no doubt that the general rule is as stated in Bobos v. Krey Packing Co., 323 Mo. 224, 19 S.W.2d 630, 633 that: "The supervision of the trial and the control of the arguments of counsel to the jury are committed in the first instance to the discretion of the trial court. Unless there has been a palpable abuse of that discretion, it is not subject to review."
And we think that the following statement of this court in the case of Adams v. Le Bow, 237 Mo.App. 1191, 172 S.W.2d 874, 877, is also true. "The situation concerning the injection of insurance is so different in different cases that question as to precedent is complicated and generally each case must be determined upon its record."
*130 Defendants rely upon the case of Davis v. F. M. Stamper Co., 347 Mo. 761, 148 S.W.2d 765, 770. We think that a careful analysis of that case will disclose a situation quite different from that shown in the instant case. There, while arguing the case to the jury, defendant's attorney, Mr. Hunter, said: "Gentlemen, this is a case where I feel dreadfully sorry for the injured boy, but you cannot and you should not be a party to taking the money out of F. M. Stamper Company and pay this boy for the wrong he caused himself. * * * The negligence is on the boy that was injured, and I am dreadfully sorry for him, and you men will be sorry for him, but you cannot put your hand into the pocket of F. M. Stamper Company and pay him because he has a serious injury."
In his closing argument plaintiff's counsel stated:
"And, now, Mr. Hunter, the fine lawyer from Moberly, I want to allay your fears. You are afraid that this jury is going to reach their hand into the pocket of F. M. Stamper Company, I want to allay your fears. We will never have to reach into your client's pocket to take out a dime. We will get the $25,000 without putting a hand into your client's pocket, so you can go back to Moberly and be unafraid."
An objection made to the above remarks was overruled by the trial court. The opinion announced that the court was unable to find any justification or excuse "for the particular remarks." The court rejected plaintiff's theory that the remarks of his attorney were invited and retaliatory. This because the argument of defendant's counsel was not that defendant lacked financial ability to pay, "but rather that there was no liability because of plaintiff's negligence." In the instant case there were six different remarks made by three attorneys concerning defendants' money, stinging and penalizing them. Another distinguishing feature between the Davis case and the instant one is that in the Davis case the trial court overruled the objection, thus, in effect, sanctioning and approving the remarks. In the instant case the trial court sustained the objection.
We do not think that the refusal of the trial court to discharge the jury constituted a palpable abuse of discretion under the peculiar facts of the instant case. It is not contended that the verdict is excessive. Considering the special damages of about $1000 for doctor's care, hospital bills, and nursing service, the verdict of $3900 is modest. The corporate defendant's abandoned answer alleged that plaintiff's "injuries were received while the plaintiff was being lawfully evicted from the property. * * *." And defendant Green's answer upon which the case was submitted to the jury alleged "and while the defendant Clarence Green was lawfully ejecting the plaintiff from the premises * * *." Green's written statement said: "I pushed him out." Thus the real question in the case was, did Green use an unreasonable amount of force in ejecting plaintiff? That issue was submitted to the jury under Instructions P-2 and D-3. Would not any fair-minded jury find, as did this one, that using enough force on an old crippled man to break his leg was more force "than reasonably appeared necessary under the circumstances ?"
The court, after being asked to instruct the jury to disregard the remarks of plaintiff's counsel, said: "I think that would only emphasize it." Having sustained the objection, the further course to be pursued was a matter resting largely within the court's discretion. Wolfson v. Baltimore Bank, Mo.App., 157 S.W.2d 560, 567, 568. Under all the circumstances, we rule the point against defendants.
It is next contended by the corporate defendant, Farmers Elevator & Supply Company, that the court erred in not sustaining its motion for a directed verdict because the acts plaintiff complained of were not within the scope of employment of the defendant, Green.
At the beginning of the trial it was stipulated by counsel that defendant Green was, on October 28, 1950, a regular employee of the corporate defendant, and in charge, as foreman, of its poultry and egg department at the Clinton plant; that the facts in the instant case arose in that department during the regular working hours.
*131 Whether a servant is, in fact, acting within the scope of his employment is ordinarily a question for the jury. Mason v. Down Town Garage Co., 227 Mo.App. 297, 53 S.W.2d 409.
In State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801, 802, the Supreme Court approved the following statement of this court: "If there is any evidence which would justify a jury in finding that the assault made on the plaintiff was incident to an attempt upon the part of defendant's driver to do his master's business, then we must hold that the case was for the jury."
According to plaintiff, when he complained to the manager of the corporate defendant about the cheating he believed defendant Green was giving him concerning the culled chickens, the manager told him to go and see Green. This plaintiff did and said to Green, "Shorty, I thought I was to get these chickens." Green ignored plaintiff momentarily and then followed a conversation at the termination of which Green began the assault on plaintiff by striking him in the head. In the period of the next few seconds Green struck plaintiff again and pushed him out the door, off of the dock and into the street. Thus, under defendants' admissions and plaintiff's testimony, the assault occurred as plaintiff was engaged in trying to settle a controversy concerning a portion of defendants' business, on the premises, during working hours, and with the employee to whom plaintiff had been sent to discuss the controversy by the corporate defendant's manager.
The case of Doyle v. Scotts Cleaning Co., 224 Mo.App. 1168, 31 S.W.2d 243, 244, is in point. In that case the action was one for assault against Scotts Cleaning Company and one Appler. Appler went to the home of plaintiff to deliver a suit of clothes and collect the charges for the cleaning of it. Plaintiff had told her husband that Appler had been discourteous when making a previous call. Plaintiff's husband answered the door when Appler made this particular delivery. When he went to the door he asked Appler if he could not be more courteous in his conversation when delivering clothes. Appler inquired as to what discourteous remarks he had reference. Plaintiff's husband thinking he might have the wrong man called plaintiff to identify him. Plaintiff came to the door and identified Appler as the one who had previously been discourteous. Where upon Appler became angry and hit plaintiff in the face. The court held that since Appler was engaged in adjusting a complaint when the assault commenced it was for the jury to say whether or not his acts were within the scope of his employment. In the course of the opinion this language appears: "The adjustment of such a complaint would be to the interest of the master's business, and as the complaint arose out of the alleged conduct or action of Appler, it was not without reason that the matter in the first instance should be called to his attention."
It is the settled rule that a motion for a directed verdict can be sustained only when the facts in evidence and the legitimate inferences therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ. In our opinion, under the evidence, the court did not err in failing to direct a verdict for the corporate defendant. Our holding in this respect is supported by the case of Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357, and the cases discussed therein.
Defendants' last complaint is that the court erred in giving Instruction 5 on behalf of plaintiff because it permitted the jury to allow damages for loss of "earning power" and for "future medical care."
There was medical testimony to the effect that plaintiff suffered a permanent injury to his leg. Prior to receiving the injuries complained of plaintiff earned an average of $50 per month, plus his house rent, which amounted to $12.50 monthly. It is true plaintiff was not an able bodied man provious to the injury since he had suffered a stroke which left him in a crippled condition. However, he was able to and did do some work. Since the injury plaintiff said: "I couldn't do nothing at all." It was held in Dean v. Kansas City, St. L. *132 & C. R. Co., 199 Mo. 386, 97 S.W. 910, that, although there may be no evidence directed to future earnings by name, yet, if by reasonable inference the evidence points to a continuation of the plaintiff's inability to labor, it is not error on the ground that there was no evidence to support it, to give an instruction directing the jury, in assessing his damages, to take into consideration his loss of future earnings. It is apparent that the evidence in the instant case likewise justifies a reasonable inference that plaintiff will in the future be unable to work. Thus, under the holding in the Dean case, supra, the issue of loss of "earning power" was properly submitted to the jury.
As to the issue of "future medical care" the evidence was that the injury to plaintiff's leg was what is termed a comminuted fracture of the upper femur. The term "comminuted" meaning that there is a fragment of the bone broken from the two portions of the main structure. This portion of the bone was left loose in the muscles of the leg. Under the facts in the instant case the holding in Sang v. City of St. Louis, 262 Mo. 454, 171 S.W. 347, 349, is in point. The Sang case was one for damages resulting from personal injuries. Sang also had received a comminuted fracture of the leg. He had been incapacitated from the injury for more than a year at the time of the trial, as had plaintiff in the instant case. His leg was causing pain at the time of the trial, as was plaintiff's here. The instruction in the Sang case told the jury that they might consider future medical expenses although there was no direct evidence of the necessity therefor. Answering defendant's contention that future medical expense should not have been submitted to the jury the Sang opinion stated: "True, a doctor had not attended this plaintiff for some time before the trial, but we cannot say as a matter of law that a leg so seriously injured as to incapacitate a man from common labor for a year and which is still painful and tender will not require medical attention and medicines in the future. To the contrary it would look entirely reasonable and probable, judging from the tendency of the proof, that such would be the case." The above Sang case is nearly identical to the case at bar on the point in question and is controlling.
Finding no error prejudicial to defendants the judgment should be affirmed. It is so ordered.
All concur.