George TOCKSTEIN (Plaintiff), Appellant,

v.

P. J. HAMILL TRANSFER COMPANY, a Corporation, Witte Hardware Company, a Corporation, and Robert J. Helderle, Defendants,

P. J. Hamill Transfer Company, a Corporation, Respondent.

No. 29432.

St. Louis Court of Appeals.

Missouri.

June 12, 1956.

Motion for Rehearing or to Transfer to Supreme Court Denied July 13, 1956.

Lyng, MacLeod & Davidson, Russell N. MacLeod, and Robert L. Lyng, St. Louis, for appellant.

J. D. Leritz, J. L. Leritz, St. Louis, for respondent.

WOLFE, Commissioner.

This is a suit for damages arising out of personal injuries sustained by the plaintiff when he was assaulted by a truck driver employed by the defendant P. J. Hamill Transfer Company. The action was brought against the transfer company, its driver, and the Witte Hardware Company for which the transfer company made deliveries. No service was had upon the driver so the action as to him was dismissed. There remained the two corporate defendants, P. J. Hamill Transfer Company and Witte Hardware Company. The trial resulted in a verdict in favor of the defendant Witte Hardware Company, but there was a judgment in favor of the plaintiff and against defendant P. J. Hamill Transfer Company in the sum of $3,000. This defendant filed a motion for a judgment in accordance with its motion for a directed verdict and the court sustained the motion, set aside the verdict, and entered a judgment for the defendant P. J. Hamill Transfer Company. From the judgment so entered the plaintiff has appealed.

The facts of the case are not complex. Robert J. Helderle, who was 23 years of age, was employed by the P. J. Hamill Transfer Company. That company had a contract with the Witte Hardware Company to make deliveries for it. On May 28, 1952, Helderle was driving one of the Hamill trucks loaded with goods to be delivered for the Witte Hardware Company. One of the deliveries was to a retail store operated by Mr. and Mrs. Ben Lehrman on South Broadway, in the City of St. Louis. The store was about 25 feet in width fronting on the east side of Broadway. Its door was set back from the front of the store for a distance of about 10 or 12 feet from the sidewalk in a sort of open vestibule. This was about 6 feet wide at the sidewalk and was walled by show windows. This vestibule narrowed down to the width of the door.

Directly in front of the door as one entered the store was a display counter running lengthwise of the store. On either side of this counter there were aisles about 4 feet in width. At about half way of the store depth these aisles ran into a cross aisle where there was a counter for wrapping and a cash register. Beyond this cross aisle and counter the lengthwise aisles continued to the back of the store.

The plaintiff, George Tockstein, a postal employee, 51 years of age, was in the store on the morning of May 28. He had purchased some casters that the proprietor, Lehrman, had placed in a paper bag for him. They were discussing a type of stain which Tockstein desired to buy when the driver of the Hamill company came in through the front door with a roll of woven wire fencing that he was delivering to the Lehrmans for the Witte Hardware Company.

As the driver passed Tockstein he seemed to lose his grip upon the roll and part of the roll hit Tockstein's arm causing a small skin scratch. Tockstein told the driver that he should be more careful and the driver continued to the rear of the store carrying the roll of fencing. When he got to the back of the store Mrs. Lehrman had some heated conversation with him because he had made the delivery through the front door instead of using a loading dock provided at the rear. The two exchanged some words on the subject and the driver left to bring in a second roll of fencing. This he carried down the aisle not occupied by Tockstein and as Mrs. Lehrman signed the dray ticket for the driver she said something about reporting him to his employer. As the driver was leaving he passed Tockstein and said, "I suppose you want to make a report too." As the driver was going through the door Tockstein decided that he would get the license number of the truck and he left the store to do so. As he came out beyond the vestibule the driver was standing about 2 feet from the curb and as he passed in front of the driver toward the truck the driver struck him in the face with his right fist and knocked him down. Tockstein suffered a fractured nose and was taken to the City Hospital.

The driver, who testified on behalf of the defendants, stated that he had left the store and had placed the dray ticket in the

glove compartment of his truck when Tockstein struck him with the bag of casters and that he then struck Tockstein. He said that he had no argument with any one in the store and that after he had brushed Tockstein with the roll of wire he had apologized.

■ The sole question before us is whether or not the plaintiff made a submissible case against P. J. Hamill Transfer Company. In passing upon the sufficiency of the evidence to support a verdict for the plaintiff, we must consider it in a light most favorable to the plaintiff. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

■ The liability of the Hamill Transfer Company must rest upon the principle of *respondeat superior*. The relation of this principle of law to assault cases has been lucidly stated in Haehl v. Wabash Railway Co., 119 Mo. 325, loc. cit. 339, 24 S.W. 737, loc. cit. 740:

"'The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such case whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant, not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible.'"

The above pronouncement has been held to be the law of Missouri since 1893 and the opinion has been widely cited and applied in other states. It may be readily seen that under it, before one assaulted by a servant may hold the master liable, there must be proof that the assault was made with the intent to promote or further the master's business.

The appellant contends that the evidence was sufficient for the jury to find that the act was in furtherance of the master's business and he relies upon the following cases in which recovery was allowed on what he considers to be analogous facts. Haehl v. Wabash Railway Co., 119 Mo. 325, loc. cit. 339, 24 S.W. 737; Whiteaker v. Chicago, Rock Island & P. Ry. Co., 252 Mo. 438, 160 S.W. 1009; Maniaci v. Interurban Express Co., 266 Mo. 633, 182 S.W. 981; Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357; Ragsdale v. Riverside Jockey Club, Mo. App., 106 S.W.2d 948; Doyle v. Scott's Cleaning Co., 224 Mo.App. 1168, 31 S.W.2d 242.

The first case, Haehl v. Wabash Railway Co., above quoted, was an action for the wrongful death of a man shot by a bridge watchman employed by the railroad. The decedent was crossing a railroad bridge and, after being halted by the watchman, he started to leave the bridge and was pursued and shot while still upon the bridge approach. The watchman was in the performance of the work for which he was hired and attempting to further that work by shooting the trespasser.

In Whiteaker v. Chicago, Rock Island & Pacific Railway Company a recovery was allowed when the conductor of a train kicked a trespasser from the top of a car. This was another clear attempt to perform his duty to eject trespassers.

Maniaci v. Interurban Express Co. arose out of the wrongful shooting of the consignee of some fruit in an attempt by the employee of the defendant to make the consignee sign a receipt for the fruit. This

case affords us no guide as to the law, for it was a four to three decision by the Supreme Court en banc and two of the judges concurring gave their concurrence in the result only. The facts, however, show that at the time of the shooting the employee was attempting to force the consignee to do an act for the benefit of the employer.

The case of Simmons v. Kroger Grocery & Baking Co. [340 Mo. 1118, 104 S.W.2d 360] permitted recovery for an assault made by a clerk of the defendant on a boy that he pursued after the boy had marked up the store windows of the defendant. The court stated: "He started out to drive the boys away. That purpose continued as the only apparent actuating cause of his actions throughout the episode."

Ragsdale v. Riverside Jockey Club involved an assault upon a customer who had been given a ticket on the wrong horse at a betting window of defendant's race track. While seeking a refund he was assaulted by the party to whom he had been directed for an adjustment. The Kansas City Court of Appeals held that since the assault occurred in the process of discussing the refund, the servant was using a method selected by him as an effective one of settling the claim. The Kansas City Court of Appeals relied upon the Maniaci case, stating that the Supreme Court had approved certain statements of law when in fact, as pointed out above, the court approved only the result of the decision in the Maniaci case. However questionable the law of this case may be, the assault took place during an argument relating to the master's business.

The case of Doyle v. Scott's Cleaning Co., decided by this court, arose out of an assault that the defendant's driver made upon a customer who charged him with being discourteous. We also quoted the Maniaci case as authority in allowing a recovery. The assault in that case took place while the driver was making a delivery to a customer. To this extent only was there any indication that the employee was attempting to advance the employer's interest, and the Doyle case should no longer be followed.

None of the above cases is analogous to the situation before us. The case of Doyle v. Scott's Cleaning Co. approaches the facts under consideration, but in all the others the assault took place in the furtherance of the master's business. In the instant case the master's business was done. The fencing had been delivered. The plaintiff was seeking no recovery for the slight scratch which he received in the process of the delivery. He decided to report the driver and the driver struck him.

The plaintiff contends that since the driver testified that there had been no angry words exchanged in the store, it is permissible to infer that he was not angry, and since he was not angry we can infer that he was not motivated by personal animus, and that since he was not so motivated he must have struck the plaintiff in furtherance of his employer's business. This rather extenuated reasoning is predicated to begin with upon the defendant's evidence which is in conflict with the plaintiff's own testimony. Both the driver and the plaintiff claimed that they were victims of an unprovoked assault by the other. Even if the defendant's evidence were sufficient to piece out plaintiff's case, plaintiff would not be entitled to have it considered as it was in contradiction of his own personal testimony. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47.

Two cases decided by the Supreme Court are closely analogous to the one before us. The first is Milazzo v. Kansas City Gas Co., Mo., 180 S.W.2d 1. The facts in that case were that a meter reader called at the store of the defendant to read the gas meter. As he came into the store the proprietor complained about previous gas bills and asked the meter reader if he was sure that his readings were correct. The gas company employee then cursed the plaintiff and asserted that the readings were correct. He then went to the basement and read the meter and upon returning to the store he was asked by the proprietor what he meant by coming into his place of busi-

ness and cursing him. Words were exchanged and the meter reader struck the plaintiff with his flashlight. In applying the rule of Haehl v. Wabash Railway Co., supra, the court said that the meter reader's assault and its purpose had no connection with the duties of the employer and that it was not intended or made to accomplish the business of the defendant, and recovery was denied.

The second case is State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801. In that case a taxi driver brought suit against the Yellow Cab Company after being assaulted by one of its drivers. The plaintiff was driving his cab and as he stopped it to discharge passengers it skidded to a slight collision with the rear bumper of the defendant's cab which was parked in front of the Muehlebach Hotel in Kansas City. After the plaintiff's passengers had alighted the driver of the defendant's cab got out and said to the plaintiff, "What do you mean?" "Get that car off of mine", and then assaulted the plaintiff. The court held that there was nothing to show that the assault was in furtherance of the master's business, and recovery was denied.

■ It is true that the question of whether or not the act was one designed to further the employer's business is a jury question. But where, as here, there is no evidence upon which a jury may find that the assault was made for that purpose, then it is the duty of the court to direct a verdict for the defendant. State ex rel. Gosselin v. Trimble, supra.

The only conclusion that can be reached upon the evidence here is that the driver for the defendant, provoked and angered by his experience in the store, gave vent to his feelings by striking the plaintiff when he came out to take the license number of the truck. Certainly it cannot be logically maintained that the assault was intended to promote the master's business in any way as the master's work was done.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the trial court be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and NOAH WEINSTEIN, Special Judge, concur.