Lawrence ADLER, Plaintiff-Respondent,

v.

Bertram F. EWING and St. Louis Cab Company, Defendants,

St. Louis Cab Company, Defendant-Appellant.

No. 30655.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied July 11, 1961.

Alphonse G. Lynch, St. Louis, for defendant Ewing.

Librach, Heller & Byrne, William P. Byrne, St. Louis, for appellant.

James F. Koester, Frank R. Smillie, St. Louis, Joseph W. Toeniskoetter, St. Louis, of counsel, for respondent.

BRADY, Commissioner.

This is a suit for damages arising out of personal injuries sustained by the respondent when he was assaulted by the defendant Ewing, who was employed by the appellant. Judgment against the appellant and Ewing was awarded in the amount of $3,500, from which only the St. Louis Cab Company appeals.

Taking the facts in the light most favorable to respondent, as we are required to do, it appears that respondent was employed by West End Motors Company as a service manager, and in such capacity made an estimate on a repair job involving a new set of piston rings in a 1953 Dodge which had "St. Louis Cab Company" on both sides of it; that the automobile was brought back to the shop several times thereafter because Ewing was not satisfied with the job; that as a result of continual dissatisfaction with the piston ring job, the respondent finally agreed to install a new motor, giving Ewing credit for the amount of the ring job on the new motor job; that when this new motor was installed and the job completed, Ewing was notified and called for the cab and asked if he could test drive it; that the respondent agreed provided he could go along because the engine had not been paid for; that Ewing had agreed to pay "C.O.D." for the job; that after driving around for awhile they reached a point about a half block from West End Motors Company where he was told to get out of the car; that he refused until the bill was paid or the car returned to the shop; that thereafter they drove around for some time during which respondent pulled the keys out of the ignition (Ewing had another set), tried to attract the attention of a policeman and to persuade some pedestrians to call the police or his company, all in an effort to get the car back to the shop; that Ewing pulled up behind a lumber yard at Shreve and Palm, parked the car, took out the keys and told him, "Now you get out of

this cab or I'm going to throw you out", and respondent replied, "You're going to have to do it because I'm not going to get out of this cab until you bring it back and square away on this bill"; that Ewing got out, walked around to the passenger side, opened the door, grabbed the respondent by the upper arm, pulled him out of his cab and injured his left knee in doing so.

Further testimony on behalf of plaintiff on this point was given by the witness Heuer. Taking that testimony in the light required of us, it shows that Heuer was the bookkeeper for West End Motors Company and he identified the original repair order for the ring job. He was also permitted to testify, over objection, that the check for this work in the amount of $127.65 was shown on the deposit slip of West End Motors, accompanying their bank deposit, as being a check of St. Louis Cab Company, Incorporated. However, upon cross-examination he testified that this deposit slip did not show whether it was their check made payable to West End Motors, or to some other party and endorsed to them.

Taking the evidence offered on behalf of the appellant which aids the respondent, the witness Triplett testified that he was the president of St. Louis Cab Company at the time this incident occurred, and that in 1957 the company was sold lock, stock and barrel to the Marcella Cab Company; that Ewing had purchased the taxicab from him, paying about $1,300 which was financed by the St. Clair Finance Company but that the title remained in the appellant. He was asked whether or not the appellant derived more benefit from a cab in operation than one tied up in a garage but an objection to this question was sustained.

One Joseph Losos testified that he was the vice-president of St. Clair Automobile Finance Company, and although subpoenaed to bring his records pertaining to an automobile sold to Ewing by appellant could not comply as he had found no such records; that they ordinarily kept such two to four years; that a search was made of the file of one of the attorneys for the St. Clair Automobile Finance Company also, but no records were found; third, that it was their practice to retain title to a car until the terms of the contract with respect to payment had been complied with.

Ewing's testimony upon the point, viewed in the light required of us, was that the check given for the original repair job was not his own check but he could not say whether it was a check of appellant's or not. In any event, it was given him by an officer of appellant as a loan. His further testimony was that he paid appellant "Seventy-five dollars for the use of the cab, twenty-five dollars for the use of the radio * * *" monthly; that they exercised control over his activities as a driver with respect to where he went, what pickups he made, etc.; that he was an employee at least before and after this incident occurred; that he never signed any papers which set out that he was to make payment for the motor installation; that he didn't know whether the title to the automobile was ever transferred to him or not, he never received it, but he did buy the cab for $1,300; that he financed such purchase through the St. Clair Finance Company, making his payments to them and contacting them when it was necessary to purchase license plates. He further testified that he left the cab on the lot of the Marcella Cab Company when he quit driving and that was all he knew of what happened to it, except that the St. Clair Finance Company later billed him for $127, but he didn't know for what.

■ Appellant contends that the trial court prejudicially erred in overruling its motion for directed verdict filed at the close of respondent's case and assigns several reasons for its position. We need not rule upon them. The trial court did not specifically rule upon this motion for a directed verdict at the time it was offered so

far as the transcript discloses and appellant did not insist upon any ruling. Moreover, when objections to the instructions were dictated into the record, counsel for the appellant stated that his objection to the instructions should show also that he objected to the trial court's action in overruling its motion for directed verdict " * * * at the close of plaintiff's case and the entire case." It is evident then that appellant took its earlier motion as overruled. Appellant proceeded to offer evidence on its own behalf. By doing so, it waived its right to complain of the trial court's action. Daniels v. Smith, Mo., 323 S.W.2d 705; Sides v. Mannino, Mo.App., 347 S.W.2d 391.

■ Appellant then contends that the trial court prejudicially erred in overruling its motion for a directed verdict filed at the close of all the evidence. Again, the transcript fails to disclose any specific ruling upon the motion nor any insistence by counsel for a ruling, but the statement of appellant's counsel above quoted shows clearly either that the trial court did so overrule the motion or that counsel understood it was overruled. The question presented by this assignment of error is whether or not, under all the evidence viewed in the light required of us, the respondent made a submissible case against this appellant.

■■ In the case of Tockstein v. P. J. Hamill Transfer Co., Mo.App., 291 S.W. 2d 624, this court held that before one assaulted by the servant may hold the master liable, there must be proof that the assault was made to promote or further the master's business. In determining whether or not such proof exists in this record, we are to give the respondent, who received the jury's verdict, the benefit of all favorable inferences from the evidence viewed in the light most favorable to him, unless it is in conflict with his own theory of the case. Tockstein v. P. J. Hamill Transfer Co., supra; Missouri Digest, Appeal and Error, ■ We are to disre-

gard the appellant's evidence unless it aids respondent's case. Thaller v. Skinner & Kennedy Company, Mo., 315 S.W.2d 124. The answer is in the affirmative. It was the appellant's automobile, Section 301.-210 RSMo 1949, V.A.M.S., and as a result of Ewing's action, appellant got it out of the garage. They recovered their property, even if their income from it, $100 a month, was not shown to have been changed by that recovery. The appellant received its property back and without the action of Ewing would not have done so, so far as this record discloses, unless someone .paid the garage bill. That this constitutes an act which was in the furtherance of its business and from which it derived benefit, albeit that benefit was not shown by this record to have been in terms of a difference in monthly income derived from the automobile, cannot be denied. It follows that the trial court did not err in overruling the appellant's motion to dismiss.

■ The appellant's contention that the trial court prejudicially erred in overruling the motion for a dismissal because the decision in a magistrate court case filed against Ewing by the West End Motors Company for the amount of repair to the automobile and also for damages to its servant, the respondent, is without merit. Appellant cites no authority for such a contention, and we believe there can be none. In order to have estoppel by former judgment, there must be identity of the thing sued for, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality of the person for or against whom the claim is made. Missouri Digest, Judgment, ■ In this action the parties are different, the respondent not being a party to the earlier magistrate action, the thing sued for is different and the cause of action is different as in this case respondent seeks to recover for himself while in the other action a master sought recovery for injuries to his servant. Moreover, this cause of action arises out of the assault, and pleadings of

the magistrate court action show that damages were there sought as punitive damages.

The appellant next contends that the trial court prejudicially erred in allowing the witness Heuer to identify Exhibits C and D, and to testify from these exhibits that a check of the St. Louis Cab Company had been given in payment of the work done on the taxicab, and in receiving these exhibits into evidence for the reasons that the testimony of Heuer on the point constituted a conclusion on his part, was self-serving and invaded the province of the jury, and because the check would be the best evidence. The appellant's contention that such testimony was self-serving is not devoloped in its brief, and we do not understand how such could be the case. Neither the witness nor his employer was a party to this action. Heuer was not repeating a statement made at some prior date which was in his own interest. Johnson v. St. Louis Public Service Co., Mo. App., 256 S.W.2d 308, [5] at page 313; 31 C.J.S. Evidence § 216, page 952. Heuer was the bookkeeper for West End Motors Company and had charge of these records which were a part of the official records of the company, kept by him or under his supervision and control. His testimony simply was that the check shown on the records of the company was originally issued by the appellant. He specifically stated that he did not know whether or not it was issued for the payment of this account and made out to the West End Motors Company. He certainly was qualified to state what the records contained, Section 490.680 RSMo 1949, V.A.M.S., and since he did only that, and never stated the check was given by appellant to West End Motors for the payment of this repair bill, he cannot be said to have invaded the province of the jury on the question of agency. Insofar as the appellant's contention that the best evidence rule prevents the admission of such testimony is concerned, the purpose of the Uniform Business Records as Evidence Law is to avoid many of the overly-technical rules of common law regarding the admissibility of business records as evidence, and to make admissible records or other entries which without the law would be inadmissible. Glynn v. Glynn, Mo.App., 291 S.W.2d 190; State of Missouri v. Hampton, Mo., 275 S.W.2d 356. Moreover, a determination of the admissibility of such evidence by the trial court will not be disturbed if supported by substantial, although conflicting, inferences therefrom. As stated in Hancock v. Crouch, Mo.App., 267 S.W.2d 36, at page 43, the law is stated:

" * * * Of course, the Uniform Business Records as Evidence Act contemplates that the trial court should determine initially whether 'the sources of information, method and time of preparation were such as to justify * * * admission' of business records. Section 490.680 RSMo 1949, V.A.M.S.; Melton v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 671(19); Lynch v. St. Louis Public Service Co., Mo.App., 261 S.W.2d 521, 525(11). It has been said that the Act 'grants to the trial court a wide discretion in determining whether the mode of keeping the books justified their admission' and that 'a holding of the sufficiency of the evidence as to the foundation will not be disturbed if supported by substantial although conflicting evidence or inferences therefrom.' * * *."

All that Heuer testified to was that the deposit slip of West End Motors included a check originally made out by the appellant. This was a matter which appeared from the records prepared by him or under his supervision and control. We find no reversible error in the trial court's ruling.

Appellant contends that the trial court erred in "overruling appellant's objection and motion to strike the testimony of witness Hoyer (sic) that an order blank for work previously done on the taxicab

referred to in the case was for the St. Louis Cab Company for the reason that this testimony constituted a conclusion on the part of the witness, was self-serving * * " and because it was not the best evidence. The order blank referred to was respondent's Exhibit B. First, it should be pointed out that Heuer did not give any such testimony. The respondent was the witness who gave the testimony which the appellant refers to in this assignment of error. It should then be pointed out that the appellant made no objection to this testimony. That objection was made by counsel for the defendant Ewing, and in any event the objection never included any motion to strike. The objection was phrased in these words: "I object to that, Your Honor, at this time it's suggestive and also if it's made up in his own handwriting, it does not show the original." Later, when the respondent was offering the exhibits, the appellant again stood silent while the objection was made by Ewing's counsel. However, appellant in its reply brief states that it should be given the benefit of Ewing's objection. It next should be pointed out that the objection never contained any statement that the testimony was self-serving, and indeed it could not be considered as self-serving. Johnson v. St. Louis Public Service Co., supra; 31 C.J.S. Evidence, supra. We will not pass upon whether or not the objection is available to the appellant on appeal. In any event, the exhibit was clearly testified and identified as a duplicate, and a "duplicate" is an original instrument repeated, or a document the same as another in the essential particulars and differs from a copy in being valid as an original. Schroer v. Schroer, Mo., 248 S.W.2d 617. Compare Miller v. John Hancock Mutual Life Insurance Company, Mo.App., 155 S.W.2d 324, [10] at page 328.

The appellant then contends that the trial court committed reversible error by the giving of Instruction No. 2. That instruction reads as follows:

"Instruction No. 2

"The Court instructs the jury that if you find on the occasion mentioned, the defendant, Bertram Ewing did pull and jerk the plaintiff, Lawrence Adler from the taxicab in question and said Lawrence Adler was thereby injured, such action on part of defendant Ewing constituted an assault upon the plaintiff."

The appellant's attack on this instruction on the grounds that it was not a proper verdict-directing instruction cannot be sustained. The respondent's verdict-directing instruction was Instruction No. 6. Neither can we agree that this instruction constituted an abstract statement of the law. It clearly required the jury to find that Ewing pulled and jerked the respondent from the taxicab and that thereby· the respondent was injured. Actually, the appellant's attack upon this instruction must be based on the other grounds stated in that it fails to define what constitutes an assault, and fails to state that Ewing had offered respondent a chance to alight and that respondent had refused to do so and stated that unless the cab was returned to the garage and the bill settled, he was not going to do so. We can see no reversible error in any contention that this instruction fails to define what constitutes an assault. Actually, what is involved here is a battery, for an assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril. 6 C.J.S. Assault and Battery § 1, subsection a, page 796. See 1 Torts, American Law Institute, § 21. A battery is the willful touching of the person of another, and has been said to be the consummation of the assault. 6 C.J.S. Assault and Battery § 1, subsection b, page 796. See 1 Torts, American Law Institute, § 18. The technical distinction between a simple assault and assault by a battery is not very obvious, but generally speaking an assault is distinguishable from a battery in that the

former is merely an unlawful attempt or offer to use force to the injury of another, while the latter is the actual unlawful use or commission of such violence. Every battery includes an assault, 6 C.J.S., supra, and therefore the appellant can not be prejudiced so long as the instruction hypothesizes facts which, if found, would constitute a battery because these facts were characterized in the instruction as an assault. The facts were sufficient from which the jury could find a battery. Moreover, the distinction being so technical, it could not be reasonably expected to have been understood by the jury. To the triers of the facts the word "assault", because of its common connotation, was undoubtedly all inclusive. Another reason the appellant's point has no merit is that appellant made no objection when the testimony on the battery was introduced, evidently treating it as an assault. The issues were clearly joined at the trial as to whether or not the facts hypothesized by this instruction constituted an assault. In Instructions No. 5 and No. 10, offered on behalf of the appellant, the incident was repeatedly referred to as an assault. Neither is there any merit in appellant's contention that this instruction should have hypothesized that Ewing had offered respondent an opportunity to alight and the circumstances of respondent's refusal to do so. Ordinarily neither the appellant nor Ewing would be permitted to defend upon the ground of justification unless such a ground is pleaded, and their separate answers do not contain any allegations of justification. Thomas v. Werremeyer, 34 Mo.App. 665; Omohundro v. Emerson, 80 Mo.App. 313; 6 C.J.S. Assault and Battery § 36a(3), page 841. However, where as in the instant case the respondent anticipated a plea of justification and set forth in the petition that the act was committed "without provocation" and Ewing and the appellant accepted the issue of justification by their denials of that allegation, they were relieved of the necessity to specifically plead that issue, Haley v. Walker, 223 Mo.App. 183, 12 S.W.

2d 759, but the facts that the appellant would have had this instruction hypothesize could not constitute justification. There is no evidence of any action toward Ewing by the respondent except that he refused to leave the car, and the words that he would not get out until the bill was paid. It is well established that words, however abusive, and these words certainly cannot be given that characterization, not themselves amounting to an assault, do not constitute justification for, or amount to a defense of, an assault and battery, Cunningham v. Reagan, Mo., 273 S.W.2d 174. Since it could not constitute a defense, it need not have been submitted. The point is ruled adversely to the appellant.

The appellant then contends that the trial court prejudicially erred by the giving of Instruction No. 6. The appellant's first attack on the instruction is on the grounds that it is vague, indefinite, and constitutes a comment on the evidence inasmuch as it instructed the jury to find against the defendant " * * * by virtue of the fact and the fact alone that defendant Ewing was an employee; * * *." A reading of the instruction shows that after the hypothesization requiring the jury to find that Ewing was an employee of the cab company, this language appears: " * * * and that said action of Defendant Ewing was within the scope of his authority and was in the furtherance of his employer's business * * *." Neither do we find anything vague or indefinite about the instruction. On the contrary, it completely sets out the respondent's theory and required the jury to specifically find each of the contested issues and essential elements of the respondent's theory.

The appellant then attacks this instruction on the grounds that it failed to require a finding that the appellant was the owner of the taxicab, and that in bringing the taxicab to the West End Motors Service, Ewing was acting as the agent of appellant. The simple answer to this is that the respondent's theory was employment and the in-

404

struction did require that Ewing be found to be an employee of the appellant and acting within the scope of that employment. The appellant then attacks the instruction on the grounds that it was a comment on the evidence for the reason that it did not require a finding of the refusal of the respondent to alight. What we have said previously with regard to Instruction No. 2 disposes of this contention. The appellant urges that the instruction is also a comment on the evidence for the reason that it did not set out what facts constituted a furtherance of the business of the appellant and the scope of the authority of Ewing as its employee. Under the facts of this case, this was not necessary. All that must be found were the ultimate facts and those were hypothesized in the instruction. The appellant's last attack upon the instruction is based upon its contention that it " * * * failed to require a finding that at all times defendant Ewing was the employee of appellant and acting within the scope of his employment." In view of the plain language of the instruction as set out above specifically requiring the jury to find that Ewing was within the scope of his authority and in furtherance of his employer's business, we do not understand what could be meant by this assignment. It has no merit in view of the plain language of the instruction. We find no prejudicial error in the giving of Instruction No. 6.

The last two assignments of error presented by the appellant are somewhat interdependent. The appellant urges that the trial court prejudicially erred in overruling Ewing's objection, motion to strike and motion for mistrial based upon surprise when Dr. Thomasson testified that respondent had sustained a post-traumatic condition in his knee whereas the petition alleged an aggravation of a pre-existing arthritic condition in the knee. The contention is that this testimony was beyond the scope of the pleadings. In like manner, the ap-

pellant contends that the giving of Instruction No. 11 was prejudicially erroneous. This instruction was the measure of damage instruction, and appellant's argument is that since the evidence of a post-traumatic arthritic condition was erroneously admitted, the instruction was erroneously given, since it authorized recovery for a condition broader than the pleadings.

■ The objection was in the following words: "If your Honor please, I object to that answer, and claim surprise. There's no pleading of this pre-existing arthritis." But the pleadings disclose that there was a specific pleading of a " * * * severe aggravation of a previous existing arthritic condition of said knee; * * *." Under this state of the record we need not rule whether or not the objection made by its co-defendant who did not appeal is available to appellant. Neither need we decide if counsel making the objection meant to say "post-traumatic" instead of what was said, "pre-existing". In any event, as the objection itself indicates by being directed " * * * to that answer * * *", it was not timely. Not only had the answer been given, but another question had been asked. Contrary to appellant's repeated statements in its brief, there was no motion to strike nor for mistrial. The trial court did not err in its ruling upon the objection, and it also follows that the appellant's contention that Instruction No. 11 was erroneously given is without merit.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is, accordingly, affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.