# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-1949
_____

Nicolas Tashman

*Plaintiff - Appellant*

v.

Advance Auto Parts, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 12, 2023
Filed: March 27, 2023
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

Nicolas A. Tashman sued Advance Auto Parts, claiming unlawful discrimination under 42 U.S.C. § 1981, assault, and intentional infliction of emotional distress. The district court[1] granted Advance Auto's motion for summary judgment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

# I.

On September 19, 2019, Tashman visited Advance Auto Parts, intending to purchase a vehicle part and test his car battery. Kevin L. Doe, an Advance Auto employee, told Tashman to fill out two forms. When Tashman did not sign his name on a form, Doe became angry, saying, among other things, "Go back to your damn country, go to your camel country"; "you don't belong in this country"; and "I'll kick your ass." The incident was recorded.

Within minutes, Tashman called Advance Auto's corporate office, which contacted the store manager and district manager. The district manager did not view the video, create an incident report, discipline Doe, or "escalate" the incident to the regional Human Resources manager. Instead, the store manager and the district manager told Doe they did not want to fire him. Six weeks later, the regional HR manager learned of the incident after an Advance Auto attorney received a litigation letter from Tashman's attorney. The regional HR manager immediately investigated and ordered the district manager to fire Doe. The district manager, after delaying for 11 days, fired him on November 12, 2019—two months after the incident.

Tashman sued Advance Auto for unlawful discrimination under 42 U.S.C. § 1981 and, under Missouri law, for assault and intentional infliction of emotional distress. The district court granted Advance Auto's motion for summary judgment, finding no § 1981 violation because Advance Auto did not have the requisite discriminatory intent, and no state tort violations because Doe's conduct was not within the scope of employment. The delay in terminating Doe, the district court concluded, did not amount to ratification.

This court reviews de novo the grant of summary judgment and the district court's conclusions of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). This court affirms if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. On summary judgment, this court views all evidence and

reasonable inferences most favorably to the non-moving party. *Torgerson*, 643 F.3d at 1042.

## II.

Section 1981(a) guarantees that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." **42 U.S.C. § 1981(a)**. Congress defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." **§ 1981(b)**. "To establish a prima facie case of discrimination in the retail context, a § 1981 plaintiff must show (1) membership in a protected class, (2) discriminatory intent on the part of the defendant, and (3) interference by the defendant with an activity protected under the statute." **Green v. Dillard's, Inc.**, 483 F.3d 533, 538 (8th Cir. 2007). "Section 1981 'does not provide a general cause of action for race discrimination.'" **Id.**, *citing* **Youngblood v. Hy-Vee Food Stores, Inc.**, 266 F.3d 851, 855 (8th Cir. 2001). A § 1981 plaintiff "must show they had a protected contractual relationship or interest." **Id.**

Tashman claims that by Doe's conduct, Advance Auto wrongfully interfered with his right to contract because of his Arab/Middle Eastern ethnicity. It is undisputed that Tashman is a member of a protected class. *See* **Torgerson**, 643 F.3d at 1052 ("Section 1981 protects 'identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics.'"), *citing* **St. Francis Coll. v. Al-Khazraji**, 481 U.S. 604, 613 (1987). He thus had a protected right under § 1981 to be free from racial discrimination in contracting. *See* **Runyon v. McCrary**, 427 U.S. 160, 168 (1976) ("It is now well established that . . . 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts."). By entering the store, requesting a battery test, and considering a purchase, Tashman was engaged in making a contract. *See* **Green**, 483 F.3d at 539 (stating that "statutory protections [under § 1981] are

-3-

triggered once a customer has made 'some tangible attempt to contract' by selecting particular items for sale"), *citing **Morris v. Dillard Dept. Stores, Inc.***, 277 F.3d 743, 752 (5th Cir. 2001). Tashman satisfies the first and third elements of a § 1981 claim.

To prevail, he must establish Advance Auto had the requisite discriminatory intent under § 1981. The parties agree the decision in *Green v. Dillard's, Inc.*, 483 F.3d 533 (8th Cir. 2007) controls. They disagree how it applies here. Tashman argues that the *Green* decision left open alternative theories for an employer's liability under § 1981, such as when the employee is acting within the scope of employment. *See **Green***, 483 F.3d at 540, *citing **Arguello v. Conoco, Inc.***, 207 F.3d 803, 810 (5th Cir. 2000), *citing ***Restatement (Second) of Agency*** § 219 (Am. L. Inst. 1958). However, *Green's* statements about the scope of employment are dicta discussing out-of-circuit cases. This court immediately said that "our court has never had occasion to adopt a liability standard for a retail employer whose employees are alleged to have violated § 1981 because in our past cases the plaintiffs failed to establish a prima facie case." **Id.** The *Green* decision does adopt the *Restatement (Second) of Agency* § 213 (Am. L. Inst. 1958) as the standard for proving an employer's discriminatory intent under § 1981. **Id.** at 540-41. *See generally **Mader v. United States***, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

"[A]n employer is directly liable for harm resulting from his own negligent or reckless conduct." **Green**, 483 F.3d at 540. Section 213 states: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless":

> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
> (c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

**Restatement (Second) of Agency** § 213.

Applying § 213, the *Green* court denied summary judgment due to a genuine dispute of material fact whether Dillard's was negligent. ***Green***, 483 F.3d at 541. In *Green*, a Dillard's employee followed an African American couple around the store glaring at them and questioning their ability to pay. ***Id.*** at 535. When they asked the employee to be more polite, she yelled a racial slur and stalked off. ***Id***. The employee had been disciplined for similar incidents and also had "unexplained anomalies" in her employment history that Dillard's failed to investigate. ***Id.*** at 541. This court concluded that "plaintiffs have produced sufficient evidence to raise a jury issue about whether Dillard's knew or should have known of [the employee's] racially hostile propensities and not only failed to take reasonable measures to stop it, but continued to place [her] on the sales floor and authorize her to interact with customers." ***Id.***

Here, unlike *Green*, there is no genuine dispute whether Advance Auto acted negligently or recklessly under § 213. As for § 213(a), Tashman does not allege that Advance Auto made improper orders or regulations. It had a written policy prohibiting discrimination based on any protected status; all employees had to read and familiarize themselves with this policy and complete annual trainings.

As for § 213(b), unlike in *Green*, Tashman cannot show Advance Auto improperly hired or retained someone they knew to harbor racially hostile propensities. Doe had no previous write-ups or misconduct in his employment record. His coworkers confirmed he was a good employee with no prior complaints. *See* **Restatement (Second) of Agency** § 213 cmt. d ("The principal may be negligent because *he has reason to know* that the servant or other agent, because of his

qualities, is likely to harm others in view of the work or instrumentalities entrusted to him.") (emphasis added).

As for § 213(c) and (d), Tashman makes no showing that Advance Auto failed to supervise or to prevent Doe's conduct. For an employer to be liable under § 1981 for inadequate disciplinary procedures, these failures must have *caused* Tashman's harm. *See* **Restatement (Second) of Agency** § 213 (A principal is "subject to liability for harm *resulting from his conduct* if he is negligent or reckless." (emphasis added)). Tashman does not claim that Advance Auto's supervisory or preventative failures caused Doe to assault him. Without showing causation, Tashman cannot establish Advance Auto was liable for Doe's conduct under § 1981. *See* **Restatement (Second) of Agency** § 213 cmt. a ("Liability [for a principal] exists only if all the requirements of an action of tort for negligence exist.")

III.

Tashman argues that Advance Auto is liable under *respondeat superior* for assault and intentional infliction of emotional distress. In Missouri, an employer is liable for an employee's conduct under *respondeat superior* if it is "(1) within the scope of employment and (2) done as a means or for the purpose of doing the work assigned by the principal." **Gibson v. Brewer**, 952 S.W.2d 239, 245-46 (Mo. banc 1997). "[W]here an employer-employee relationship exists, the doctrine of *respondeat superior* holds that the employer is vicariously liable for the injury-causing conduct of an employee done within the course and scope of employment." **Central Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC**, 422 S.W.3d 312, 323 (Mo. banc 2014).

To determine whether *respondeat superior* applies, Missouri courts analyze negligent torts differently than intentional torts.

For negligent torts, Missouri courts focus on the employee's course of conduct just before committing the tort: If this conduct furthered the employer's purpose,

-6-

then the negligent tort was committed within the scope of employment, and *respondeat superior* applies. *See Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. banc 2012) (ruling that a railroad was not liable for injury caused by an accidental discharge of employee's personal pistol because "the acts causing the negligent discharge . . . were outside the course and scope of the co-employee's employment . . . ."). Analyzing *respondeat superior* cases, the Supreme Court of Missouri focuses on the employees' conduct just before committing the tort: When employees were "playing around with" a personal gun, the railroad was not liable when it went off. *Id.*, *citing Lavender v. Illinois Cent. R.R. Co.*, 219 S.W.2d 353, 358 (Mo. 1949). When employees were "playing around, wrestling and scuffling in a railroad car," the railroad was not liable when someone fell. *Id.* at 30, *citing Reeve v. Northern Pacific Ry. Co.*, 144 P. 63, 64 (Wash. 1914). But the employer is liable when the negligent conduct occurred while the employee was doing the employer's work. *Id.*, *citing Baker v. Chicago, Burlington & Quincy R.R. Co.*, 39 S.W.2d 535, 541-42 (Mo. 1931) (ruling that the railroad was liable for the injury when the foreman "pushed the plaintiff in an effort to get the plaintiff to better perform his work").

Tashman's claims for assault and intentional infliction of emotional distress are intentional torts. *See Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. banc 2011) (explaining assault requires proof of "defendant's intent to cause bodily harm or offensive contact, or apprehension of either"); *Gibson*, 860 S.W.2d at 249 ("Intentional infliction of emotional distress requires not only intentional conduct, but conduct that is intended only to cause severe emotional harm.").

For intentional torts to trigger *respondeat superior*, Missouri courts focus on the employee's conduct at the time of the tort. When the tortfeasor acts to harm the victim, not to benefit the employer, intentional torts are not within the scope of employment. *See Milazzo v. Kansas City Gas Co.*, 180 S.W.2d 1, 6 (Mo. 1944) (determining that an employee's assault was not within the scope of employment because the act was not intended to accomplish the employer's business); *State ex*

*rel. Gosselin v. Trimble*, 41 S.W.2d 801, 804 (Mo. 1931) (ruling that the employer was not liable for an assault by a driver because the assault was not in furtherance of the cab company's business); *Noah v. Ziehl*, 759 S.W.2d 905, 913 (Mo. App. 1988) (ruling that the employer was not liable when the employee-bouncer attacked the patron after removing him from the saloon because, once outside, the conduct was no longer "in furtherance of his employer's business"); *Tockstein v. P. J. Hamill Transfer Co.*, 291 S.W.2d 624, 628 (Mo. App. 1956) (concluding that the employee's assault was not within the scope of employment because it was not intended to promote the employer's business in any way).

True, as Tashman argues, intentional torts can be within the scope of employment if the action is of the "same general nature as that authorized, or incidental to the conduct authorized." *Carter v. Willert Home Prod., Inc.*, 714 S.W.2d 506, 512 (Mo. banc 1986), *abrogated on other grounds by Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 312 (Mo. banc 1993). *See Linham v. Murphy*, 232 S.W.2d 937, 942 (Mo. 1950) (ruling that the flight instructor was still "acting within . . . the scope of his employment when he continued to operate the plane [for his own enjoyment] after he had ordered plaintiff to release the controls" because operating the plane was part of his job duties); *Daughtery v. Allee's Sports Bar and Grill*, 260 S.W.3d 869, 874 (Mo. App. 2008) (denying summary judgment, finding a genuine factual dispute whether the employee-bartender's act of placing a toothpick in the customer's drink was within the scope of employment); *Doe by Doe v. B.P.S Guard Servs., Inc.*, 945 F.2d 1422, 1426 (8th Cir. 1991) (determining a reasonable jury could conclude that, by practicing taping with the VCR as the employer ordered, the guards were acting within the scope of employment, despite receiving personal enjoyment from the conduct) (applying Missouri law).

Tashman emphasizes *Carter v. Willert Home Products, Inc.* The Missouri Supreme Court there determined that an employer was liable for the employee's defamatory statements about the plaintiff's credit risk because the statements were incidental to her job duties to verify applicants' employment. *Carter*, 714 S.W.2d at 512. Unlike the statements in *Carter*, which were "incidental to employment

verification," Doe's conduct was prohibited by Advance Auto's policy and unrelated to his job duties as a sales representative. *See, e.g., **Gibson***, 952 S.W.2d at 246 (ruling that the employer is not liable under agency theory for intentional infliction of emotional distress when the acts are not within scope of employment, and in fact forbidden).

Tashman argues that Advance Auto is liable because it placed Doe in a position of responsibility where he harmed Tashman—regardless of whether the conduct was intended to further Advance Auto's business. Tashman cites one case—now overruled—upholding liability for an intentional tort where the tort itself was not meant to benefit the employer. *See **Doyle v. Scott's Cleaning Co.***, 31 S.W.2d 242, 245 (Mo. App. 1930) (ruling that a cleaning company was liable when its deliveryman punched a homeowner after a delivery), *overruled by **Tockstein***, 291 S.W.2d at 627 (concluding that "the *Doyle* case should no longer be followed"). However, the decision overruling *Doyle* noted the lack of evidence there to show "that the employee was attempting to advance the employer's interest." ***Tockstein***, 291 S.W.2d at 627. Tashman thus must show that Doe's committing the tort was intended to benefit Advance Auto. *See **Doe by Doe***, 945 F.2d at 1425 ("Under Missouri law, there can be no respondeat superior liability if the employee was acting entirely for his own purposes."); ***Haehl v. Wabash R. Co.***, 24 S.W. 737, 740 (Mo. 1893) ("The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes."); ***Maniaci v. Interurban Express Co.***, 182 S.W. 981, 985 (Mo. 1916) (ruling that the plaintiff stated "a good cause of action" that the employer was liable when an employee injured the plaintiff while attempting to have him sign a receipt for the employer's delivery of fruit).

Doe's "outrageous" conduct toward Tashman was not within the scope of employment. *See **Doe by Doe***, 945 F.2d at 1427 ("[A]n act is deemed to be outside the scope of employment if it is so outrageous 'as to be totally without reason or responsibility.'"), *citing **Wellman v. Pacer Oil Co.***, 504 S.W.2d 55, 58 (Mo. banc

1973) (concluding the employee's "outrageous" actions conducted "without reason or responsibility" fell outside the scope of employment); ***Henderson v. Laclede Radio, Inc.***, 506 S.W.2d 434, 437 (Mo. 1974) (determining that the employer was not liable when an employee knocked the plaintiff to the ground and demanded money because such an "outrageous and unforeseeable act" was not within the scope of employment).  Doe acted due to personal feelings of animosity, without any purpose to further Advance Auto's business.  *Compare* ***P.S. and R.S. v. Psychiatric Coverage***, 887 S.W.2d 622, 625 (Mo App. 1994) (ruling that the employer was not liable for damages from an agent-psychologist's sexual relations with a patient because they were motivated by personal desires), *with* ***Carter***, 714 S.W.2d at 512 (affirming the denial of employer's motion for directed verdict because a jury could reasonably find the employee's "statements were intended to be in furtherance of the discharge of her assigned tasks, and not a means of requiting any personal feelings of antipathy toward plaintiff.").

Generally, "whether or not the act was one designed to further the employer's business is a jury question," but where "there is no evidence upon which a jury may find that the assault was made for the purpose, then it is the duty of the court to direct a verdict for the defendant."  ***Tockstein***, 291 S.W.2d at 628.  Here, no evidence shows that Doe's conduct was within the scope of employment and done to benefit Advance Auto, as required for liability under *respondeat superior*.

IV.

Tashman argues that Advance Auto impliedly ratified Doe's conduct when the store manager and district manager told Doe they did not want to fire him and delayed firing him.  Learning of the incident, the regional HR manager promptly investigated and ordered Doe to be terminated—all within the same day.  He was fired two months after the incident for violating Advance Auto's policy on discrimination.

-10-

"Under Missouri law ratification is an express or implied adoption or confirmation by one person, with knowledge of all material matters, of an act performed on his behalf by another who lacked the authority to do so." ***Newman v. Schiff***, 778 F.2d 460, 467 (8th Cir. 1985). "Ratification relates back and is the equivalent of authority at the commencement of the act." ***Id.*** "Even an unauthorized act of an agent may be affirmed by a principal who fails to repudiate the act after learning of it." ***Sooter v. Magic Lantern, Inc.***, 771 S.W.2d 359, 363 (Mo. App. 1989).

No specific length of time determines when an employer's delay amounts to implied ratification. Tashman believes that any delay amounts to ratification, citing dicta from a Missouri appellate court case. *See* ***Egnatic v. Nguyen***, 113 S.W.3d 659, 676 (Mo. App. 2003) (applying Kansas law) ("Once a principal receives notice of an unauthorized act performed by an agent, the principal must immediately repudiate the agent's action or it is presumed that the principal ratified the act.") (but holding that the principal did not ratify the agent's unauthorized conduct because it was unaware of the agent's behavior at the time it accepted payment). *Cf.* ***BE&K Const. Co. v. NLRB***, 23 F.3d 1459, 1467 (8th Cir. 1994) (determining a union ratified the unfair labor practices by "condoning and failing to disavow the unlawful acts of its members.").

According to the Missouri Supreme Court, implied ratification requires that the principal receive a benefit from the agent's conduct. *See* ***State ex. Inf. McKittrick v. Koon***, 201 S.W.2d 446, 456 (Mo. banc 1947) ("Where a principal with knowledge of the material facts of the unauthorized acts of another who assumes to act for him, receives and retains the benefits thereof, he thereby ratifies the same."); ***Rider v. Julian***, 282 S.W.2d 484, 496 (Mo. banc 1955) (determining the company ratified the driver's negligence when it received and retained income derived from its operation); ***Compton v. Vaughan***, 222 S.W.2d 81, 83 (Mo. 1949) (holding that the principal ratified the agent's unauthorized conduct by accepting payment); ***St. Louis Mut. Life Ins. Co. v. Walter***, 46 S.W.2d 166, 171 (Mo. 1931) (ruling that the

principal ratified the agent's conduct by receiving and retaining payment from the unauthorized transaction).

Here, Advance Auto did not impliedly ratify Doe's behavior. *See **Gaar v. Gaar's Inc.***, 994 S.W.2d 612, 621 (Mo. App. 1999) (ruling that the plaintiff could not establish ratification because there was no evidence that the principal "engaged in any conduct manifesting ratification" of the agent's conduct). The two-month delay here is insufficient to show that Advance Auto ratified Doe's conduct. *See **Long's Marine, Inc. v. Boyland***, 899 S.W.2d 945, 948 (Mo. App. 1995) ("An individual who acquiesces for a considerable time after entering into a contract and accepts its benefit is deemed to have ratified it.") (holding that the principal ratified the agent's unauthorized agreement when the arrangement was in force for six months). Advance Auto did not ratify Doe's behavior.

## V.

Advance Auto is not liable under § 1981 for discrimination based on its employee's conduct. Tashman's claims for assault and intentional infliction of emotional distress fail under *respondeat superior* and ratification. The district court properly granted summary judgment.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____